[Crim. No. 3319. First Dist., Div. One. July 8, 1957.]

THE PEOPLE, Respondent, v. EUGENE RICHARDSON, Appellant.

312

Lew M. Warden, Jr., under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Marvin J. Christiansen, Deputy Attorney General, for Respondent.

BRAY, J.—Defendant appeals from a jury conviction of two counts of violation of section 11500, Health and Safety Code, for unlawfully selling, furnishing and giving away heroin.

QUESTIONS PRESENTED

1. Sufficiency of the evidence (a) first count; (b) second count.

2. Instructions (a) possession included in offense of selling; (b) no instruction on use of narcotics; (c) conspiracy.

3. Was there a variance between proof and the allegations of the information.

4. Entrapment.

1. EVIDENCE.

(a) *First Count.*

Officer Frank Reed, Bureau of Special Services of the Oakland Police Department, casually met a person known as Dinky or Curly Johnson. Reed's duties required him to move about Oakland for the purpose of making purchases of narcotics in order to obtain information for future arrests. The two of them met appellant. There was a conversation between appellant and Dinky, the subject of which was unknown to Reed. However, Reed heard appellant say that he would have to catch up with someone referred to as Wimpy. Someone said "Wimpy's got some stuff." Dinky asked for some money and Reed gave him $10. Dinky gave the $10 to appellant just before appellant took off to catch Wimpy.

As appellant was leaving he told them to follow him up to Seventh and Linden Street. Reed, Dinky, and another (called Slim) rode in the agent's car. They saw appellant again at Seventh and Filbert. In the talk that ensued the question was raised as to where "we would go and fix." A "fix" is an injection of a narcotic. Appellant said: "We will go down to my place." All of them proceeded to appellant's residence. Appellant, Dinky and Slim got out of the car and went indoors. Reed stayed in the car. About 20 minutes later, Dinky returned and handed Reed a packet which contained heroin. Reed testified that he never saw that packet in appellant's possession at any time. And when he had marked the packet for identification, he indicated that it had been sold to him by Wimpy. Appellant denied having any knowledge or relationship with the transaction of January 20, 1956, which is the date of the above described event.

■ The evidence is not sufficient to justify a conviction on this count. The only evidence purporting to connect appellant with the heroin with which Dinky returned is that Dinky gave appellant $10. Appellant, when asked where they could "fix," said "We will go down to my place." Dinky, Slim and appellant went into the building where appellant had an apartment. Dinky returned with a packet of heroin. Neither Slim nor Dinky were called as witnesses. There was no testimony that Dinky was searched prior to going into the building, nor any testimony that the three went to appellant's apartment. Respondent relies upon *People* v. *Grijalva* (1941), 48 Cal.App.2d 690 [121 P.2d 32], as upholding this conviction. But the facts in that case were radically different and point up the missing element in this case, namely, the failure to show that appellant produced the heroin that Dinky had. There the officer gave the defendant money. The defendant left and returned with the narcotic which he delivered to the officer. The circumstances in our case are quite similar but not as strong as those in *People* v. *Barnett* (1953), 118 Cal.App.2d 336 [257 P.2d 1041]. There an inspector gave two marked bills to an operator who was working for him. The inspector observed the operator get into an automobile driven by the defendant. The inspector followed the automobile but in about five minutes lost it. About one and a half hours later the operator handed the inspector a packet of heroin. Later the inspector found the marked bills in defendant's wallet. This language in the Barnett case is apropos here (p. 338) : "This is a very tenuous chain of circumstances

indeed to support an implied finding that defendant sold the heroin to the operator . . ."

(b) *Second Count.*

On January 25, 1956, in the evening, Reed met Slim in a pool hall. They encountered appellant later. Reed had given Slim $5.00 pursuant to an understanding between them regarding the purchase of narcotics. He had not approached appellant regarding the purchase of narcotics, but he heard Slim tell appellant that they were trying to get enough money to get some "stuff." Slim asked appellant if he had any change because they only had about $8.00. Appellant said: "Well, give me what you've got there. There's Charles over there. I think I can get a ten with what we've got here for eight dollars." "Charles" was Charles Lovett, a codefendant in the present case.

Slim gave appellant the money, $5.00 of which Reed had contributed. Appellant gave Charles the money and he held out his right hand, meeting Charles' left hand. Then appellant turned and said to them: "Come on, let's split."

Appellant, Slim, and Reed went to appellant's apartment where appellant divided the contents of a gelatin capsule between them. Reed took his, which was heroin, and put it in a piece of paper.

Appellant testified that he and Reed pooled their funds for a joint purchase of heroin by Slim, that Slim divided the heroin, and that he, Slim, and Jelly took a "fix," but that Reed did not use his share. Appellant had known Charles Lovett since 1953. Neither Dinky nor Slim were called as witnesses.

This evidence approaches that in *People* v. *Grijalva, supra,* 48 Cal.App.2d 690. Appellant contends that it merely shows that he joined in the venture of purchasing heroin from Lovett. ■ However, the testimony of Officer Reed justifies the reasonable conclusion that appellant informed Slim he could get narcotics, that he took the money from Slim, gave it to Lovett, received a capsule of narcotics from Lovett, of which he gave Reed a portion; that appellant contributed no money to the purchase; that he had known Lovett for some time; that Lovett was a supplier of narcotics (a can of milk and measuring spoon were found in Lovett's apartment; these items are used by a supplier of narcotics) ; that he received $10 worth of heroin from Lovett for $8.00; that this $2.00 value difference was appellant's profit in furnishing the narcotic.

2. INSTRUCTIONS.

(a) *Possession.*

The court instructed that possession is necessarily included in the offense of selling, furnishing and giving away narcotics, and gave an alternative form of verdict for the use of the jury in the event they desired to find appellant guilty of possession only. Appellant contends that this was error, that although as a practical matter a user has physical possession of the narcotic, since the crime of possession carried a heavier punishment than the crime of using narcotics does, the crime of possession only applies to a trafficker and not to a mere addict. ▆ A nontrafficker may be convicted of the crime of possession. (See *People* v. *Hatton,* 114 Cal.App. 2d 195 [249 P.2d 901]; *People* v. *Eberhard,* 114 Cal.App.2d 133 [249 P.2d 590]; *People* v. *Bigelow,* 94 Cal.App. 28 [270 P. 460].)

▆ There may be a verdict of any offense which is necessarily included in that which is charged. (Pen. Code, § 1159.) The theory is that in the lesser offense some element of the greater is absent. (See *People* v. *Harris* (1951), 105 Cal.App. 2d 701, 704 [233 P.2d 633].) ▆ The test is whether the greater offense cannot be committed without committing the lesser. (*People* v. *Babb* (1951), 103 Cal.App.2d 326, 330 [229 P.2d 843]; *People* v. *Chester* (1956), 138 Cal.App.2d 829 [292 P.2d 573].) So the question is resolved into whether there may be a sale without the seller being possessed of the narcotic. It would seem that in order to be connected with the narcotic being sold there must be some possession. It is said in 17 California Jurisprudence 2d 41: ''Possession exists when a person has actual control or dominion, or when he has the right to possession or control either individually or through an agent. . . . If the narcotic is put, kept or left by a person at some place where it is so immediately and exclusively accessible to him as to be under his dominion and control, he is in possession within the meaning of the law.'' Thus, there can be constructive possession of narcotics by a seller of narcotics also.

*People* v. *Branch* (1953), 119 Cal.App.2d 490, 495 [260 P.2d 27], lends some support to the giving of such an instruction on possession as a lesser included offense in the instant case. There it was held that the defendant could not be convicted of both possession and sale where possession was incidental to the sale of narcotics. In the instant case any

possible possession by appellant could only be incidental to the sale with which he was charged.

■ Appellant's contention that the offenses of sale and possession are separate and distinct crimes for which an accused may be separately tried and convicted cannot be denied. (See *People* v. *Abair* (1951), 102 Cal.App.2d 765, 773 [228 P.2d 336].) But that is true of every situation involving lesser included crimes. His contention has no bearing on whether an offense is a lesser included one. If this were the test, it does not seem that there could be any rule allowing conviction of a lesser included offense.

■ Actually, appellant has no cause to complain of the instruction. The jury was instructed on possession as a lesser included offense and then given two forms of verdicts, one form on possession and one on being guilty as charged. The jury found him guilty as charged. There cannot be any serious contention that such an instruction was prejudicial when he was found guilty of selling. Appellant's contention requires an assumption that the jury found, and could only find him, guilty of possession, or that the jury mistakenly brought in the wrong form of verdict. Neither assumption can be supported by the record. If there is insufficient evidence to support the verdict on selling, appellant is not guilty and possession is immaterial to the issues.

(b) *No Instruction on Use.*

■ Appellant contends that the court of its own motion should have instructed that if the jury believed appellant guilty only of using a narcotic they could not find him guilty of anything, citing *People* v. *Buffum,* 40 Cal.2d 709, 724 [256 P.2d 317], on the well established general principle that the court must instruct upon all matters vital to a proper consideration of the case. The jury were given three types of verdicts, one of guilty as charged, one of guilty of possession, and the other of not guilty. They returned later to the courtroom to again receive instructions on sale and possession. They returned with a verdict of guilty as charged. In order to support the appellant's contention, it must be assumed that there was only sufficient evidence of use. Then the contention requires an assumption that the jury inferred from use possession. Also from the second inference, a third is required, that the jury inferred from possession guilt of sale. This is not supported by anything in the record. The jury was correctly instructed as to the law which appellant was charged with violating. There would be no need to instruct

on the fact that he used a narcotic since it was an incidental part of the testimony concerning the second count. It was not a matter vital to the consideration of the evidence in relation to the offenses charged. Even assuming it should have been given, it cannot be held to be prejudicial where the appellant was found guilty of selling and where it requires two tenuous inferences in no way supported by the evidence.

(c) *Conspiracy.*

 The court instructed on conspiracy. Appellant contends that the crime of conspiracy may not be proved and a conviction had on the substantive offense as charged where there is no charge of conspiracy in the information. " 'Counsel labor under the misapprehension that a conspiracy may not be proved to exist between two defendants for the purpose of establishing the fact that the act of one in furtherance of the conspiracy is in legal contemplation the act of both and for which both may be convicted. They have the erroneous notion that when a conspiracy to commit a criminal act is shown to exist the conspirators may only be convicted of the criminal conspiracy and not of the crime actually committed. Such is not the law. The books abound with cases where conspiracies have been proved and where the jury under appropriate instructions must have found, of necessity, the existence of a conspiracy in order to have returned a verdict of guilty as to one or more of the defendants. . . .' " (*People* v. *Keyes,* 103 Cal.App. 624, 633 [284 P. 1096], quoting from *People* v. *Bryant,* 101 Cal.App. 84 [281 P. 404].) The jury could have found that appellant conspired with Lovett to sell narcotics and the actual sale was the overt act which the law requires.

3. VARIANCE.

 Appellant contends he was misled in his defense in that, relying upon the distinctions between the offenses of sale, possession, and use, he testified that he and Officer Reed were joint purchasers and users, not a seller. The contention has no merit. There was no variance. The defense itself demonstrates he had reasonable notice of the charge against him, and Officer Reed gave sufficient evidence on the charge of sale, at least as to the second count. As to the first count, appellant alleged he was not present or knew anything about it, which shows no misleading by the charge. In order to give any substance to the contention of the appellant, it must be assumed that there was no evidence of sale and the jury convicted him of possession. But the record shows to the con-

trary. The only way this contention could be material to this appeal is if the jury had brought in a verdict that the appellant was guilty of use of a narcotic. Additionally, any evidence on possession in the instant case was incidental to the sale and part of the circumstances proving sale.

4. ENTRAPMENT.

 Appellant's contention that the court should have given an offered instruction on entrapment is well answered by the following from *People* v. *Tillman*, 142 Cal.App.2d 404, 406-407 [298 P.2d 631] : "No instruction on entrapment was required because the defense of entrapment was not an issue in the case. '[T]he defense of entrapment is a positive defense imposing upon an accused the burden of showing that he was induced to commit the act for which he is on trial (citation).' "

 As to the first count, appellant denied that the acts charged had been committed. As to the second count his defense was that he was a joint purchaser, not that he was entrapped. Moreover, there was an utter lack of evidence of any persuasion or inducement being used to get him to commit any crime, other than the ordinary conversation that would take place between a willing buyer and a willing seller. (See *People* v. *Evans*, 134 Cal.App.2d 733, 737 [286 P.2d 368].) Assuming Slim to be an informer, no inference of unlawful entrapment arises from the fact that Slim solicited appellant. (See *People* v. *Alamillo*, 113 Cal.App.2d 617, 620 [248 P.2d 421].)

The judgment of conviction of the first count is reversed. The judgment of conviction of the second count is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied August 7, 1957, and appellant's petition for a hearing by the Supreme Court was denied September 4, 1957.