[Crim. No. 6534.   Second Dist., Div. One.   June 3, 1959.]

THE PEOPLE, Respondent, v. ROBERT JOHN McNULTY et al., Defendants; RODERICK J. SCOBIE, Appellant.

Gladys Towles Root and Eugene V. McPherson for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Marvin Part, Deputy Attorney General, for Respondent.

LILLIE, J.—Defendants Roderick J. Scobie and Robert John McNulty were charged by way of indictment with selling marijuana in violation of section 11500, Health and Safety

Code. Having waived their right to a trial by jury, the matter was submitted to the court on the transcript of the testimony given before the grand jury, subject to the right to offer additional evidence. Both were found guilty. The trial court denied defendant Scobie's motion for a new trial and application for probation, and sentenced him to the state prison. From the judgment he appeals.

The sole issue before this court is the sufficiency of the evidence to support the judgment. Appellant more particularly argues that it is insufficient to show his connection with the sale of the narcotic.

Viewing the evidence in a light most favorable to the respondent, which we are bound to do, the following appears in the record before us. William Hassell, a police officer, had previously known appellant and several times had spoken to him about buying marijuana, on which occasions appellant denied having any of his own. The officer also had known the codefendant (hereinafter referred to as Bob) and had seen appellant several times in his company. On March 17, 1958, at approximately 8 p.m., Officer Hassell went to the Belmont Bar where he met Bob and talked to him until around 8:30 when appellant appeared. He asked appellant about securing some marijuana for him. The latter told the officer he could "score" for him, but would have to use his (the officer's) car, to which Hassell responded: "No. Why can't I take you over to the place and I'll wait outside for you." The officer then gave appellant two $1.00 bills whereupon the latter called out to Bob, "You take him down to score on 14th Street." Bob motioned he would do so and appellant gave him the two $1.00 bills. Officer Hassell then drove Bob to 14th and Santee Streets where he parked and waited in his car while Bob went into the premises. Five minutes later he returned to the car and Hassell drove him back to the bar. While riding, Bob took out four brown paper-wrapped cigarettes from his right forearm, held there by a rubber band, and gave them to the police officer. Hassell dropped Bob off at the Belmont Bar and returned to the police building to make a report and book the evidence. The cigarettes were examined and found to contain marijuana.

After his arrest, appellant talked to Officer Salagi and when confronted with Hassell, who related what occurred, appellant denied knowing him stating that he sold him nothing. Later in the interrogation room, appellant said that

Hassell's face was familiar but "he doesn't remember," and asked if he could make a "deal." Salagi told him he could not. On his way out, appellant asked where he was going and when the officer told him he was going to jail, appellant again stated "can't we make a deal?" The officer answered "No," and appellant then said, "You got me. I did it. I needed the money. Could we make a deal?"

At the trial the appellant testified that he was at the Belmont Bar on the evening and at the time in question to pick up his girl who worked there; that up to then he had never met Bob, although he had seen him around and, in fact, did not even know his name; that he saw Bob and Hassell, known to him as "Billy," outside and had seen and spoken four or five times with Billy prior to this evening; that while Billy was talking to Bob he went inside the bar and that was the last time he saw Billy; that he received no money from the officer, did not tell anyone to give him anything at 14th and Santee Streets and knew no one at that address; and that he had never used or sold narcotics. The appellant further testified that he did not recognize Hassell when confronted with him because he (appellant) is an alcoholic; and that he had just finished serving a sentence after pleading guilty to possession of benzedrine. On cross-examination he told the court that he was a bartender but could not get into the Union because of his record of arrests, mostly on suspicion, and that he had known Officer Hassell about 20 minutes and had never talked to him before.

Robert (Bob) John McNulty, codefendant, testified that the first time he saw Hassell was inside the Belmont Bar where he (Hassell) asked defendant Scobie if he could "score" some marijuana, to which defendant said "no." Then Hassell asked him (Bob) the same question to which he answered "I don't know," and then said "I'll see what I can do." He and the officer then drove to 14th and Santee Streets where the latter gave him $2.00. He went upstairs, could get no marijuana, gave the $2.00 back to Hassell and returned to the Belmont Bar. When asked why he went to the 14th Street address, he answered "Well, sir, I had heard from various sources that was a spot."

In support of his argument that the evidence is insufficient to connect him with the sale in question, appellant cites a series of civil cases defining the term "sale." Referring particularly to the Uniform Sales Act, appellant contends that to constitute a sale "there must be a transfer of an in-

terest in property for a price in money," citing *Milana* v. *Credit Discount Co.*, 27 Cal.2d 335 [163 P.2d 869, 165 A.L.R. 621], that "it is essential that the thing to be sold must be transferred from seller to buyer." On the theory that the record discloses no evidence he ever handled the marijuana or was in any way connected with it, appellant argues there could be no sale through him. A similar position was advanced and rejected in the case of *People* v. *Valencia*, 156 Cal.App.2d 337 [319 P.2d 377]. Valencia gave appellant therein money the police officer had previously handed him, and they all went to the home of appellant's mother where appellant, he and an operator went into the premises, leaving the officer outside. Shortly thereafter, the operator returned alone and handed the officer the narcotic. Appellant argued that there was no evidence establishing that he was the person who delivered the narcotic to the operator who later gave it to the officer. The court held that the logical inference from all of the circumstances was that appellant sold the narcotics to the officer using the operator as the medium of delivery, and said at page 340: "Since we must assume in favor of the verdict the existence of every fact which the trier of fact could have reasonably deduced from the evidence (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778]), it is clear that the trial court's discretion based upon the facts in this case may not be disturbed, and this is so even though some of the evidence is circumstantial (*People* v. *Newland, supra,* p. 681)." ■ Applicable also to the case at bar is *People* v. *Taylor*, 52 Cal.2d 91, wherein the Supreme Court stated at page 94 [338 P.2d 377] : "It is not necessary that the buyer deal directly with the seller. The fact that the parties deal with each other through a third party is sufficient to sustain a conviction (*Cf. People* v. *Bradford,* 130 Cal.App.2d 606, 608 [5] [279 P.2d 561].)"

■ The record before us reveals that Officer Hassell had previously spoken to appellant about buying marijuana, had seen him and his codefendant together on several occasions, had been told by appellant on the evening in question he could "score" for him, and had given the latter two $1.00 bills. When told by the officer that appellant could not use his car but that he would drive him to the location, appellant gave the codefendant the money and told him to take the officer to "score" on 14th Street, which he did. From this evidence alone arises the reasonable inference that either Bob

was the go-between for appellant who was the seller, or both defendants were working as coparticipants in the sale for a supplier of narcotics operating out of the premises at 14th and Santee Streets. (*People* v. *Taylor*, 52 Cal.2d 91 [338 P.2d 377].) In any event, it is obvious from the evidence and all reasonable deductions therefrom that appellant actually sold the marijuana to the police officer, using Bob as the medium of delivery. This inference is made even stronger by appellant's statements to Officer Salagi after his arrest, first denying knowledge of Hassell, and then asking that he be permitted "to make a deal," after admitting "I did it." At this point, reference is made to appellant's contention that there was confusion concerning his discussion wtih Salagi, claiming the "deal" referred to related to his arrest on a charge of possession of benzedrine. It was for the trier of fact to determine whether the officer's testimony that the offenses were segregated in the conversation was true. To it the trial judge gave full credence.

Of interest is appellant's own testimony which placed him at the Belmont Bar at the same time as that related by the officer; and although he denied participating in the sale, appellant gave inconsistent statements concerning his prior acquaintance with Hassell, saying first that he saw or spoke to him four or five times prior to the evening in question, and then later, that he had only known Hassell for about 20 minutes and had never before spoken to him. Codefendant McNulty contradicted appellant's story. He said he met Hassell inside the bar. Appellant testified they were standing outside. He stated Hassell asked appellant if he could "score." Appellant said he just passed Hassell on his way into the bar and this was the last time he ever saw him. The trial judge obviously believed the officer's testimony and rejected that of the two defendants, the latter on the ground there were "large inconsistencies in the stories told by the defendants." Tested by the time-honored rules that the weight of the evidence and credibility of the witnesses are matters exclusively for the trier of fact (*People* v. *Gonzalves*, 158 Cal. App.2d 98 [322 P.2d 255]) and that the existence of every fact which the trier could have reasonably deduced from the evidence is assumed on appeal in favor of the judgment (*People* v. *Newland*, 15 Cal.2d 678 [104 P.2d 778]), the record reveals more than ample substantial evidence to support appellant's conviction on the charge of sale.

Appellant's reliance on *People* v. *Richardson*, 152 Cal.App.

2d 310 [313 P.2d 651], and *People* v. *Barnett*, 118 Cal.App.2d 336 [257 P.2d 1041], is misplaced. Neither of these cases aids him for they are readily distinguishable on their facts. In the Richardson case, *supra,* an operator gave defendant $10, but there was no evidence of any kind from which it could be inferred that defendant supplied the heroin to the operator. Without any other inculpatory evidence, in the absence of any incriminatory statements by the defendant and in view of an error made by the operator in marking the identifying package containing the heroin, the court held that the evidence was insufficient to sustain a conviction of sale. In the Bennett case, *supra,* the officer gave marked bills to an informer, saw him get into a car driven by defendant, followed them, and one and one-half hours later was handed heroin by the informer. When arrested, the marked bills were found in defendant's possession. The court held that mere possession of the marked money did not prove sale. As in the Richardson case, *supra,* defendant made no incriminating statements. These two cases, on their facts, are entirely dissimilar to the one at bar in which not only is it apparent from the evidence that appellant sold the marijuana to the police officer using his codefendant as a medium of delivery, but actually implicated himself by admitting, after his arrest, he "did it" and by asking the officer to "make a deal" with him.

For the foregoing reasons, the judgment is affirmed.

White, P. J., and Fourt, J., concurred.