[Crim. No. 6586.   Second Dist., Div. Two.   Aug. 3, 1959.]

THE PEOPLE, Respondent, v. IRENE SCORZA, Appellant.

Martha Malone Jefferson for Appellant.

Stanley Mosk, Attorney General and Jack E. Goertzen, Deputy Attorney General, for Respondent.

ASHBURN, J.—Defendant was found guilty as charged by way of indictment filed by the grand jury accusing her and one Martin Ramirez of violation of section 11500 of the Health and Safety Code, to wit, selling, furnishing and giving away a narcotic, marijuana. It is claimed that the evidence is insufficient to sustain the judgment of conviction.

The witnesses before the grand jury were Officer Hassell and a forensic chemist. A jury trial was waived and it was stipulated that the trial court could read and consider the transcript of the testimony before the grand jury, also the transcript of a recorded conversation of appellant and certain police officers taken at the police building immediately following her arrest.

Officer Hassell testified that at 12:05 a.m. on March 8, 1958, he was at a place called Green's Gardens at 9716 South Broadway talking to a person known to him as Martin R. Ramirez about getting some marijuana. A man and his wife entered Green's Gardens. Officer Hassell had seen the couple before and they were known to him as Ben and Irene Scorza (appellant). They sat down at the table with the officer and Ramirez. The latter asked them if they could get Hassell "a can of tea," this term meaning marijuana in narcotic jargon. They replied that they could not. Hassell then asked, "Can you get me ten dollars' worth?" and the appellant answered "Yes." Officer Hassell gave Ramirez a 10 dollar bill. Ramirez, Ben Scorza and appellant then left the place and told Hassell to wait for them there. Approximately 30 minutes later appellant returned and motioned to Hassell to go outside where Ramirez was waiting. Ramirez and Hassell got into the latter's car and Ramirez gave the officer a package containing 18 brown paper cigarettes.

Officer Jack Olin Carter, a duly qualified forensic chemist, analyzed the contents of the package and identified the contents as marijuana.

Appellant "concedes that had the prosecution merely presented the evidence which was before the grand jury, the testimony of William Hassell would have been sufficient to sustain the finding of guilt." It is contended, however, that the transcript of appellant's conversation became a part of the prosecution's case and contradicts the testimony of Officer Hassell; that "[t]his is not a case therefore of conflict in the evidence between the prosecution's witness and appellant's witness, but is a conflict in the prosecution's own evidence. Under these circumstances, appellant submits that the evidence

is insufficient to establish that appellant made an illegal sale of narcotics, as charged in the Indictment." Appellant cites no specific lack of evidence to support the verdict, her position apparently being that the court should have disbelieved the officer's testimony because of appellant's statements.

The record discloses that in appellant's statement made on April 19, 1958, she first said that she had not been into Green's Garden for about six months, but upon being confronted by Officer Hassell she remembered the events above set forth, but stated that it was Ramirez and not she who got the marijuana for Hassell. She said she wasn't going to get anything for Hassell because she didn't even know him. During the interrogation the following questions by Sergeant Fredrickson and answers by appellant occurred: "Q. Well, Irene, you know and I know that you were involved in a transaction with this officer? A. Yes. Q. In the sale of marijuana—you had your hand in that. Martin wanted so you took Martin out to get it and you had Martin give it to Bill. A. But Martin got it. I didn't have Martin give it to him. Q. You took Martin out to get it? A. We took him out to get it, yes. Q. And then you got it for him? A. No, he got it. Q. Well, then you took him where he could get it? A. Well, he was the one that told us to take him there. He told us to take him there so we said 'okay.' Q. You took him to get the stuff? A. Yes."

As stated in *People* v. *Acosta,* 45 Cal.2d 538, 542-543 [290 P.2d 1]: ". . . if there is prosecution evidence which tends to disprove criminality and other prosecution evidence which tends to prove criminality, it is the function of the trier of fact to determine which version is to be believed. [Citations.] The courts may sometimes say that the prosecution is 'bound by' extrajudicial statements of defendant which are introduced by the prosecution and which are irreconcilable with guilt, but this concept is applicable only where there is no other competent and substantial evidence which could establish guilt. [Citations.]"

Applying the above rule, and viewing the evidence in the light of the rules declared in *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778], there is ample evidence to justify the finding of guilt. A sale took place and under the evidence appellant was a principal in the commission of the crime. (Pen. Code, § 31; see *People* v. *Taylor,* 52 Cal.2d 91, 94 [338 P.2d 337]; *People* v. *Bradford,* 130 Cal.App.2d 606,

608 [279 P.2d 561]; *People* v. *Valencia,* 156 Cal.App.2d 337, 340 [319 P.2d 377]; *People* v. *McNulty,* 171 Cal.App.2d 86, 89 [340 P.2d 340].)

Judgment affirmed.

Fox, P. J., and Herndon, J., concurred.