[Crim. No. 6630.   Second Dist., Div. Three.   Dec. 29, 1959.]

THE PEOPLE, Respondent, v. CEOPHILUS JONES, Appellant.

Gladys Towles Root for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Respondent.

FORD, J.—Defendant Ceophilus Jones appeals from a judgment of conviction of the offense of selling, furnishing and giving away a narcotic, marijuana, in violation of section 11500 of the Health and Safety Code.

At the trial of the appellant pursuant to an indictment charging such offense, a jury was waived. It was stipulated that the matter would be submitted to the trial judge upon

the testimony given before the grand jury and a transcript of a recorded statement of appellant taken by police officers after his arrest, together with such further testimony as should be offered by the People or the defendant.

William Hassell, an officer attached to the narcotic detail of the Los Angeles Police Department, testified before the grand jury that on March 27, 1958, at about 7:45 p.m. he was in a bar and café located at 9716 South Broadway, Los Angeles, talking to Martin Ramirez when the appellant Jones entered the premises. Ramirez called the appellant over and said, "Bill here, wants to buy four joints." Jones replied, "O. K., let's go in my car." The three men then drove in a black Buick automobile bearing license KMK 962 to 441 East 127th Street where the officer handed the appellant two dollars. They then entered a house and the appellant talked to a woman whom he called "Deemer," but the officer could not hear what was said. The appellant handed the woman two dollars and the three men returned to the car, drove about a hundred yards down the street and parked. The appellant then said that the woman would bring the "pot" out to them in about two or three minutes. She came out to the car and handed six brown paper wrapped cigarettes to the appellant who gave two thereof to Ramirez and the other four to the officer. While returning to the bar and café, Ramirez said, "We might as well smoke the joint now," and thereupon lighted one of the cigarettes, took a few puffs and then handed it to Jones. Jones took a few puffs and handed it back to Ramirez. Ramirez said, "Here, Bill, do you want some?" The officer replied, "No, not in the car. The heat is liable to stop us and they could smell." The officer thereafter had the four cigarettes delivered to the police laboratory for analysis.

Jack Olin Carter, a forensic chemist employed by the police department, testified before the grand jury that in his opinion the material within each of the cigarettes was marijuana.

The recorded statement of the appellant was taken by police officers on April 19, 1958. The transcript thereof discloses that he denied knowing Officer Hassell and denied that the officer made a purchase from him. However, he admitted that his automobile was a Buick bearing license KMK 962 and that he knew a woman whose name was Deemer. The appellant denied that the incident as related by Officer Hassell had occurred. He further said that he had never been arrested before.

At the trial, Officer Hassell testified that the appellant then present in court was the person about whom he had testified before the grand jury. On cross-examination, he testified that there had been about 30 cases concerning which he had notes and which he had presented to the grand jury. Only one of those cases happened on the night of March 27. He stated that there were just two people in the affair, the appellant and Ramirez, but added the name of the woman "Deemer" in response to a further question. He further testified that the appellant bought the cigarettes from Deemer, as far as he knew, and at his request, and that he gave him the money "to buy, not to sell." On recross-examination, the officer testified that he asked the appellant if he could get marijuana for him.

The appellant testified in his own behalf and denied that on March 27, 1958, he took Officer Hassell to buy some marijuana cigarettes. He denied that he ever had had any possession of marijuana and stated that he had never before been arrested. He said that he had been in the bar, known as Green's Garden Café, at 9716 South Broadway and admitted knowing a woman by the name of Deemer but said he did not know where she lived and had never taken anyone to her house.

Upon this appeal, the evidence and the inferences which could reasonably be deduced therefrom must be viewed in the light most favorable to the People. This court may not reweigh the evidence or resolve conflicts therein in favor of the appellant. The weight to be given to the evidence was a matter exclusively within the domain of the trial court. (*People* v. *Flummerfelt*, 153 Cal.App.2d 104, 105 [313 P.2d 912].) Under such governing principle, the contentions of the appellant will be examined.

The first contention made is that the conviction cannot stand because Jones did not sell, as charged, but bought marijuana on behalf of the police officer. The problem thus presented is not new.

In *People* v. *Grijalva*, 48 Cal.App.2d 690 [121 P.2d 32], the facts were that a police officer was introduced to the defendant by a man named Willis who was acquainted with the defendant and who told the officer that the defendant "would be in a position to make proper connections." The officer and the defendant drove to a place designated by the defendant and the officer gave the latter $5.00 "to go and get the marihuana from the particular connection where he was going." A short time thereafter the defendant returned in company with another man and handed the officer a package containing

20 marijuana cigarettes. There was testimony as to a second and similar transaction. Mr. Presiding Justice York disposed of the defendant's argument that there was no evidence of a sale as follows, at page 693: "It was shown by the prosecution that the officer gave appellant $5 on two different occasions and on each occasion appellant returned and gave to the officer twenty marihuana cigarettes. In each transaction appellant took the money of the officer, obtained the cigarettes and delivered them to said officer. This constituted a sale."

In *People* v. *McNulty,* 171 Cal.App.2d 86 [340 P.2d 340], the facts were that the police officer asked the appellant Scobie, to whom he had previously spoken about buying marijuana, to secure some marijuana for the officer. The appellant said that he would have to use the officer's automobile but the officer refused to permit such use. The officer then gave the appellant two $1.00 bills, whereupon the appellant called out to one Bob (codefendant in the indictment), "You take him down to score on 14th Street." Bob motioned that he would do so and the appellant gave him the two $1.00 bills. The officer then drove Bob to 14th and Santee Streets and on the return trip Bob gave the officer four brown paper wrapped cigarettes. The appellant's contention that there was no evidence of a sale by him was rejected, the court stating at pages 89-90: "From this evidence alone arises the reasonable inference that either Bob was the go-between for appellant who was the seller, or both defendants were working as coparticipants in the sale for a supplier of narcotics operating out of the premises at 14th and Santee Streets. (*People* v. *Taylor,* 52 Cal.2d 91 [338 P.2d 377].) In any event, it is obvious from the evidence and all reasonable deductions therefrom that appellant actually sold the marijuana to the police officer, using Bob as the medium of delivery."

*People* v. *Beccera,* 175 Cal.App.2d 53 [345 P.2d 269], is a very recent case in which the claim was made that the appellant was acting only as the agent of the buyer, an officer. Officer Lopez told the appellant that he was looking for three papers of heroin for $20. Appellant took the officer to a place near some railroad tracks where he parked. The officer gave the appellant $20 and the appellant left and returned in about 10 minutes with one Frank Ramirez. They then drove to another place where Ramirez obtained from a rubbish pile a rubber balloon containing heroin. He gave the balloon to the appellant and the two returned to the automobile. Ramirez

left and appellant drove a few blocks, parked and then gave part of the heroin to the officer. The court said, at page 55: "The most that can be said from the evidence is that the question of whether or not appellant was the agent of Lopez or a seller operating with Ramirez was a question for the trier of fact and the trier of fact by the verdict has impliedly ruled against the construction contended for by appellant."

In *People* v. *Richardson,* 152 Cal.App.2d 310 [313 P.2d 651], the defendant was charged in two counts with the offense of selling, furnishing and giving away heroin in violation of section 11500, Health and Safety Code. On appeal, the judgment of conviction as to the first count was reversed and the judgment of conviction as to the second count was affirmed. The evidence as to the second count was that a police officer met a man called Slim in a pool hall and that they encountered the appellant later. The officer had given Slim $5.00 pursuant to an understanding between them regarding the purchase of narcotics. While the officer had not approached appellant regarding the purchase of narcotics, he heard Slim tell appellant that they were trying to get enough money to get some "stuff." Slim asked appellant if he had any change because they had only about $8.00. Appellant said: "Well, give me what you've got there. There's Charles over there. I think I can get a ten with what we've got here for eight dollars." Slim gave appellant the money, $5.00 of which the officer had contributed. The appellant then approached one Charles Lovett (codefendant in the case) who was on the premises, gave the money to Charles, and held out his right hand, meeting Charles' left hand. Then the appellant, Slim and the officer went to the appellant's apartment where appellant divided the contents of a gelatin capsule containing heroin between them. At page 314, the court said: "This evidence approaches that in *People* v. *Grijalva, supra,* 48 Cal.App.2d 690. Appellant contends that it merely shows that he joined in the venture of purchasing heroin from Lovett. However, the testimony of Officer Reed justifies the reasonable conclusion that appellant informed Slim he could get narcotics, that he took the money from Slim, gave it to Lovett, received a capsule of narcotics from Lovett, of which he gave Reed a portion; that appellant contributed no money to the purchase; that he had known Lovett for some time; that Lovett was a supplier of narcotics (a can of milk and measuring spoon were found in Lovett's apartment; these items are used by a supplier of narcotics); that he received $10 worth of heroin

from Lovett for $8.00; that this $2.00 value difference was appellant's profit in furnishing the narcotic.''

However, it is to be noted that the offense charged in the case before this court was not limited to the act of selling but broadly included the furnishing or giving away of a narcotic. (*People* v. *Taylor,* 52 Cal.2d 91, 94 [338 P.2d 377]; *People* v. *Kolb,* 174 Cal.App.2d 102, 104 [344 P.2d 316]; cf. *People* v. *Barrera,* 172 Cal.App.2d 490, 492 [342 P.2d 286].) Therefore, the proof of a consideration moving to the appellant is not an essential element of the crime. But, in the present case, the trier of fact could reasonably draw the inference that the appellant hoped to receive benefit from the two cigarettes delivered to Ramirez over and above the four delivered to the officer.

Under the evidence the trial court was warranted in reaching the conclusion that the appellant either was acting on his own behalf in supplying the marijuana cigarettes to the officer or was participating with the woman named Deemer in the sale of a narcotic to the officer. As stated by Mr. Justice McComb in *People* v. *Taylor, supra,* at page 94: ''Likewise, the evidence was sufficient to prove that defendant participated in the sale thereof. Section 31 of the Penal Code classifies as principals in the commission of a crime, 'All persons concerned in the commission of a crime . . . whether they directly commit the act constituting the offense, or aid and abet in its commission. . . .' '' (*Cf. People* v. *Conlon,* 149 Cal.App.2d 525, 528 [308 P.2d 402]; *People* v. *Bernal,* 174 Cal.App.2d 777, 784-785 [345 P.2d 140].)

The next contention of the appellant is that under the theory of entrapment his conviction cannot stand. Such defense was not raised at the time of the trial. (See *People* v. *Branch,* 119 Cal.App.2d 490, 495 [260 P.2d 27], as to the necessity of so raising the issue.) The main argument of counsel on behalf of the appellant at the trial was that the appellant did not commit the act charged, the officer having made a mistake in identification. The defense of entrapment would not have been consistent with such claim. (*People* v. *Johnson,* 99 Cal.App.2d 559, 562 [222 P.2d 58]; *People* v. *Lee,* 9 Cal.App.2d 99, 109 [48 P.2d 1003]; see *People* v. *Evans,* 134 Cal.App.2d 733, 737 [286 P.2d 368].)

But, in any event, entrapment is a positive defense as to which a defendant asserting it has the burden of showing that he was induced to commit the act for which he is on trial. (*People* v. *Terry,* 44 Cal.2d 371, 372 [282 P.2d 19].) The

record in the case before this court is devoid of any support for such a claim. ■ While the governing principle has been stated and restated in many cases, it is sufficient to quote the following pertinent language from *People* v. *Richardson, supra,* 152 Cal.App.2d 310, at page 318: "Moreover, there was an utter lack of evidence of any persuasion or inducement being used to get him to commit any crime, other than the ordinary conversation that would take place between a willing buyer and a willing seller. (See *People* v. *Evans,* 134 Cal.App.2d 733, 737 [286 P.2d 368].) Assuming Slim to be an informer, no inference of unlawful entrapment arises from the fact that Slim solicited appellant. (See *People* v. *Alamillo,* 113 Cal.App.2d 617, 620 [248 P.2d 421].)"

Appellant cites *Trice* v. *United States,* 211 F.2d 513, but his reliance thereon is misplaced. (*People* v. *Benford,* 53 Cal.2d 1, 12 [345 P.2d 928].)

The appellant's final contention is that the evidence is not of sufficient weight to justify the conviction. ■■ But there is no requirement that the officer's testimony be corroborated in a case of this character. (*People* v. *McCrasky,* 149 Cal. App.2d 630, 635 [309 P.2d 115]; *People* v. *Garza,* 160 Cal. App.2d 538, 541 [325 P.2d 200].) ■ The credibility of the witness Hassell was a matter for the determination of the trial court. (*People* v. *Valencia,* 156 Cal.App.2d 337, 342 [319 P.2d 377].) "It is the province of the trier of the facts to pass upon the credibility of the witnesses and determine the weight that should be given to their testimony; also, to resolve any conflicts and inconsistencies in their testimony, and this rule applies to conflicts and inconsistencies in the testimony of a particular witness." (*People* v. *Alonzo,* 158 Cal.App.2d 45, 47 [322 P.2d 42].) Furthermore, the People were not bound by any exculpatory statements of the defendant in the transcript of his recorded statement merely because the prosecution offered such transcript in evidence. (*People* v. *Scorza,* 172 Cal.App.2d 571 [342 P.2d 295].) ■ "The courts may sometimes say that the prosecution is 'bound by' extrajudicial statements of defendant which are introduced by the prosecution and which are irreconcilable with guilt, but this concept is applicable only where there is no other competent and substantial evidence which could establish guilt." (*People* v. *Acosta,* 45 Cal.2d 538, 542 [290 P.2d 1].)

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.