[Crim. No. 7849. Second Dist., Div. Three. Dec. 11, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. ELI HERMAN HUTCHERSON, Defendant and Appellant.

Eli Herman Hutcherson, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Plaintiff and Respondent.

FORD, J.—In one count of an information Frank Harvey Beatty, John Alfred Jacobs and the appellant Hutcherson were accused of selling, furnishing and giving away marijuana in violation of section 11531 of the Health and Safety Code. In another count, the appellant alone was charged with a violation of that code section. The defendants Beatty and Jacobs pleaded guilty to the offense of possession of marijuana (Health & Saf. Code, § 11530), as a lesser but necessarily included offense in that charged in the first count. In a jury trial, the appellant Hutcherson was found to be guilty as charged in each count. The sentence was that he be imprisoned in the state prison for the term prescribed by law. He has appealed from the judgment.

The offense alleged in the first count was stated to have occurred on or about March 15, 1960, that in the second count to have taken place on or about March 23, 1960. A résumé of the evidence will be given.

Justin B. Burley, a deputy sheriff for the county of Los Angeles assigned to the narcotics detail, testified that he saw the appellant on March 15, 1960, at about 6 or 6:30 p. m. on North Fair Oaks in Pasadena. With the witness were his partner, Deputy Smith, and a man known as Bennie Williams. The officers were not in uniform. They were seated in a Thunderbird automobile owned by Deputy Smith. Williams "contacted" the appellant and shortly thereafter the two men came over to the officers' vehicle. The appellant was asked if he had some marijuana. He replied that he could get them some "joints."[1] The appellant said he would like them to follow him to another place. He then entered his automobile, in which Beatty and Jacobs were seated, and drove to a house "approximately seven to ten blocks away from this original location." The appellant got out of his car and went to the officers' vehicle. He then said that Beatty and Jacobs were going to get the marijuana and it would take about 15 to 20 minutes. Later Beatty and Jacobs came back to the vicinity. Williams was given $5.00 of "Pasadena advance funds." He left the officers' automobile and went to where Beatty was. The witness Burley saw a package pass from Beatty to Wil-

---

[1] The witness testified that in the "narcotic field," the word "joint" means a marijuana cigarette.

liams; this package then "came" to the witness. It contained marijuana cigarettes.

On March 23, 1960, the witness Burley saw the appellant again "around 6:00 or 7:00 p. m." on North Fair Oaks. Williams and Deputy Smith were with the witness. The appellant was driving his automobile and the officers stopped him. They had previously told him that they would be back and would like to purchase some more marijuana. The appellant said he would try to get them a pound of marijuana. The appellant then entered their automobile and the car was driven to Altadena. The appellant left the car and later returned, saying that his "connection" did not have anything at that time. He then said that he might be able to get them some "joints" and he directed the officers to another place. There he left the vehicle, entered a house, and later returned with four marijuana cigarettes. He handed them to Deputy Smith who then gave him $2.00.

On cross-examination, Mr. Burley stated that Bennie Williams was an informant for the Pasadena Police Department. The officer went to the place where he met the appellant because Williams said that people who dealt in narcotics frequented that location. The witness did not know where Williams could be found at the time of the trial. He last saw him "the last part of 1960" in the courtroom. When Officer Burley was asked as to whether the $5.00 (which he had given Williams on the first occasion) had passed to Beatty and Jacobs, the officer testified as follows: "I can't say where it passed to or who it passed to. I know that Mr. Williams did not have the $5 when he came back; that he had thirteen marijuana cigarettes."

It was stipulated that it would be deemed that a qualified forensic chemist had testified that in his opinion the substance in the various cigarettes was marijuana.

Officer James G. Rowden of the Pasadena Police Department testified that the appellant made certain statements to him freely and voluntarily. The conversation occurred on April 2, 1960. As to the incident of March 15, 1960, the appellant said that he had received no money and had not actually handled the narcotics. With respect to the occurrence on March 23, 1960, he said that when Deputy Smith gave him $2.00 he refused the money, stating that he did not want it. The officer further testified that the appellant "indicated . . . that Bennie [Williams] had more or less got him into this situation."

Deputy Sheriff Dorothy A. Smith's testimony as to the two occurrences was substantially the same as that of the witness Burley. As to the transaction of March 23, 1960, she stated that when the appellant said he did "not want to take money for it," she took one dollar back; the other dollar "was for his trouble." At the time of her testimony at the trial, the witness did not know where Williams was.

The prosecution called as a witness Frank Harvey Beatty, who had theretofore entered a plea of guilty to possession of marijuana as has been noted. He testified that on March 15, 1960, he and Jacobs were standing in front of a "hot dog" stand on Fair Oaks when the appellant and Williams approached them and asked him if he would like to sell 14 of the marijuana cigarettes which he had. He said he would not, but finally he agreed to let them have the cigarettes "which he was supposed to repay me on the following Saturday." They went to Beatty's house where he rolled the cigarettes and then gave them to somebody inside of Deputy Smith's car. At that time no one gave him any money for the cigarettes. He had not known Williams before that day but had known the appellant; they had been friends. On cross-examination, Beatty testified that later on when he and the appellant got back into the latter's automobile, the appellant gave him money. He further said that at the "hot dog" stand, the appellant rather than Williams carried on the conversation. He had not been sentenced pursuant to his plea of guilty and hoped that his testimony against the appellant would help him in that matter.

John Alfred Jacobs was also called as a witness for the prosecution. His testimony was substantially the same as that of Beatty except that he did not testify to a transfer of the cigarettes to someone inside the officers car or to the passage of money. He said that Beatty walked to the officers' car and at that time Williams was standing outside the vehicle.

George W. Ferguson, an investigator for the district attorney, testified as to his efforts to serve a subpoena on Bennie Williams. He spoke to all the investigating officers, both in the Pasadena Police Department and in the Sheriff's Department. He further testified: "I sent telegrams to the C. I. I. in Sacramento, the D.M.V. and Driver's License Bureau in Sacramento, California, and received replies that did not divulge any information as to his whereabouts. I talked to people he had lived with, a party by the name of Verona Williams, who

denied that she was the wife of Bennie Williams or any rela-tion to him. I spoke to his parole officer . . . the parole officer, Mr. Zwaska, had not seen or heard from Bennie Williams prior to December of 1960.''[2] The witness asked the Chief of Police at San Bernardino to make inquiry of Williams' father; the report received was that the father had not seen or heard from his son for some time. Information was sought in jail and hospital records as well as in those of agencies concerned with law enforcement. The witness' search was concluded on the morning of the day on which he testified. He personally spent in excess of 60 hours in the investigation in addition to the time given by others in his department and the sheriff's office, and the Pasadena and San Bernardino Police Departments.

The appellant took the witness stand in his own defense. He testified as to his background, his prior narcotic addiction, and his relationship with Bennie Williams. He saw Williams on March 15, 1960. Jacobs and Beatty came with him to the location on North Fair Oaks. Williams approached the appel-lant and said that some friends of his had come from Bakers-field. He wanted to sell them marijuana to obtain money for his heroin habit but did not want his friends to know that he was the seller. The appellant ''more or less reluctantly agreed to do this.'' They went to the vicinity of Beatty's house and Beatty and Jacobs left the appellant's car. Later Beatty and Jacobs returned and stopped a few feet away from the officers' car. Williams got out of that car and met Beatty and Jacobs; they had a discussion. The appellant saw nothing ''change hands''; it was ''pitch black dark.'' No one gave the appellant any money or marijuana. The appellant returned to his car and left with Beatty and Jacobs. As to this incident, the appellant further testified that in his first conversation with Williams, the latter showed him ''some loose homemade cigarettes''; the appellant did not know whether the cigarettes contained marijuana and it was his understanding that if he joined in Williams' plan, the cigarettes would come from Williams. He did not know whether the cigarettes later trans-ferred were those of Beatty or of Williams; they were not the appellant's cigarettes. But he did not ''see anything pass,'' money or packages.

On March 23, 1960, the appellant saw the officers and Wil-liams between 7 and 8 p. m., or a little later. While the appellant and Williams were riding in the back seat of the

---

[2]The testimony of Mr. Ferguson was given on May 9, 1961.

officers' car, Williams poked him with his elbow and showed him some homemade cigarettes. The appellant testified: "Well, I—after we rode coming back from Altadena I said, like I would be thinking, 'Oh, I know of something,' or words to that effect. 'I might be able to get you a few cigarettes, so I'll tell you what you do: You take me to where I stay, my residence.' " The officers drove to his residence. The appellant entered the house. Later Williams entered and they had an argument when Williams asked him to take the cigarettes and return to the car and give them to the officers. Finally the appellant took the cigarettes and returned to the car. Deputy Smith gave him $2.00 and he returned a dollar. The appellant gave Williams the other dollar.

On rebuttal, over the objection that it was "unfair and it should not be permitted in a situation where an informant has participated as a percipient witness in the prosecution of a narcotics case and has been available at the time of the preliminary hearing but is not made available at the time of the trial," the prosecution was permitted to introduce in evidence the testimony of Bennie Williams given at the preliminary examination.[3] He testified in part that on March 15, 1960, he met the appellant and "asked him about some pot."[4] The appellant replied that "he knew a fellow that had just purchased a can, had a can." Williams asked where the man was and the appellant said that they would get him. They walked across the street and met Beatty and Jacobs. Then, Williams testified, the following took place: "Jacobs and I talked a little small talk . . . he said to Mr. Beatty, that was the one that had the weed, but he only had one joint on him, and he asked how much weed I wished to purchase, and I told him we would probably spend five or ten dollars on weed, and he made a statement, 'We'll have to go and roll up.' " The witness further testified: "Well, I said, 'If I am going to spend five dollars or ten dollars, I expect some kind of deal.' So the

---

[3]In response to the statement embodying the objection on the part of the appellant, the deputy district attorney stated in part as follows: "Now, I did not introduce it [the prior testimony of Williams] as part of my case in chief. Believe me, your Honor, I had no idea whatever that the defendant and his wife were going to contend that the cigarettes that are the subject matter of the lawsuit were, in truth and in fact, Bennie Williams' cigarettes and Bennie just got the defendant to pass out his cigarettes. This apparently is the defense, and Bennie Williams' testimony at the preliminary hearing is contrary. I think it is certainly fair rebuttal."

[4]The witness testified that "pot" and "weed" mean marijuana.

statement was made, 'So I will give you 14 joints for five dollars' ''; that statement was made by Beatty. The three men told Williams to follow their car. At the place where the two cars came to a stop, the appellant left his car and entered the officers' vehicle. Beatty and Jacobs went into the house. As to the conversation in the officers' car, Williams testified in part as follows: "We made arrangements for Mr. Hutcherson to meet him the following Saturday . . . to purchase some marijuana in bulk form. The conversation started off with the purchase of a pound of marijuana, which he stated he could get for fifty or sixty dollars." The witness further said: "So the amount that was eventually settled on was half a pound, and he was supposed to meet Mr. Hutcherson at 4:00 p. m. the following Saturday." Beatty and Jacobs returned. Williams told Deputy Burley that "here they were" and Burley handed him a five-dollar bill. Williams left the vehicle and gave the five-dollar bill to Beatty. Beatty handed him the package which Williams gave to Burley. Williams also testified with respect to the incident of March 23, 1960. He said that when Deputy Smith gave the appellant two dollars, the appellant gave her back one dollar and said he would let her have the cigarettes for one dollar.

When the testimony of Bennie Williams given at the preliminary examination was offered, the objection made was not placed on the ground that no proper showing had been made as to his unavailability. If such an objection had been made, the trial court would have been warranted in overruling it. [██] The testimony of the witness Ferguson justified the conclusion that extensive and timely efforts had been made to find Williams. As this court said in *People* v. *Cahan,* 141 Cal.App.2d 891 [297 P.2d 715], at pages 900-901: "The statute says the testimony of a witness taken before the committing magistrate may be read at the trial on its being satisfactorily shown to the court that he cannot, with due diligence, be found within the state. (Pen. Code, § 686.) A finding of a trial court that sufficient showing has been made will not be disturbed on review unless its discretion has been abused—that is, unless it appears the evidence is insufficient to support the finding." (See also *People* v. *Thomas,* 164 Cal. App.2d 571, 576-577 [331 P.2d 82].)

At the preliminary examination Williams had been cross-examined at length with respect to his background, his relationship with Deputies Burley and Smith, and the occurrences of March 15 and March 23. (*Cf. People* v. *Hermes,* 73 Cal.

App.2d 947, 955-956 [168 P.2d 44].) No unfairness arising from the use of such prior testimony appears. There was no error.

Upon this appeal, the evidence and the inferences which could reasonably be deduced therefrom must be viewed in the light most favorable to the People. This court may not reweigh the evidence or resolve conflicts therein in favor of the appellant. The weight to be given to the evidence was a matter exclusively within the domain of the jury. (*People* v. *Flummerfelt*, 153 Cal.App.2d 104, 105-106 [313 P.2d 912].) Insofar as there was any conflict in the testimony offered by the prosecution, as said in *People* v. *Berkeley*, 9 Cal.App.2d 197 [48 P.2d 970], at page 199: "... the effect of a disagreement in the testimony of different witnesses introduced by the same side is simply that a conflict in the evidence is thereby created and that the determination of a jury upon such conflict is as conclusive upon a reviewing court as if the conflict existed in the testimony of witnesses called by the opposing sides of the controversy."

With respect to the occurrence of March 15, 1960, the appellant states that the officers and the informant Williams testified that Beatty made the actual sale to Williams. He argues that the evidence showed no sale by him. Such contention is not sound. In the first place, the offense charged was not limited to the act of selling but broadly included the furnishing or giving away of a narcotic. (*People* v. *Taylor*, 52 Cal.2d 91, 94 [338 P.2d 337]; *People* v. *Kolb*, 174 Cal.App.2d 102, 104 [344 P.2d 316]; *cf. People* v. *Barrera*, 172 Cal.App.2d 490, 492 [342 P.2d 286].) Therefore, the proof of a consideration moving to the appellant is not an essential element of the crime. (*People* v. *Jones*, 176 Cal.App. 2d 743, 749 [1 Cal.Rptr. 637].) But in the present case the jury was warranted in reaching the conclusion that there was a sale of marijuana cigarettes for $5.00 and that the appellant participated with Beatty and Jacobs in such sale. As stated in *People* v. *Taylor, supra,* 52 Cal.2d 91, at page 94: "Likewise, the evidence was sufficient to prove that defendant participated in the sale thereof. Section 31 of the Penal Code classifies as principals in the commission of a crime, 'All persons concerned in the commission of a crime ... whether they directly commit the act constituting the offense, or aid and abet in its commission. ...'" (See also *People* v. *Jones, supra,* 176 Cal.App.2d 743, 746-749.) Of a contention

similar to that presented in the present case, the court said in *People* v. *Conlon,* 149 Cal.App.2d 525 [308 P.2d 402], at page 528: ''The first contention advanced is that the evidence is insufficient to support the conviction of Conlon for the alleged violation of July 25, 1955. The argument is that not once did Conlon have the marijuana in his possession; that he did not receive any money paid by Alvarez to Staats; that he did not in any way participate in the transaction but was a mere observer. The contention cannot be sustained. The evidence we have heretofore narrated sufficiently shows that he was directly concerned in the commission of the crime and aided and abetted its commission. (Pen. Code, § 31.) He directed Alvarez to the home of Staats, directed him to park in such a way as not to excite suspicion. He went into the Staats house and, inferably, told Staats that Alvarez wanted to buy marijuana. He was present when the sale was made to Alvarez. The jury could conclude that he was so intimately concerned with the whole transaction as to be fairly held to have aided and abetted Staats in the commission of the crime.''

With respect to the occurrence of March 23, 1960, it is clear from a review of the evidence that the trier of fact was justified in determining that there was a sale of marijuana by the appellant.

The appellant was not arrested until the following month. Although he attempts to find in this fact some basis for an attack upon the case of the People, such contention cannot aid him on this appeal. (*Cf. People* v. *Seely,* 66 Cal. App.2d 408, 412 [152 P.2d 454].)

The jury was warranted in finding that there had been no entrapment. Entrapment is a positive defense as to which a defendant who asserts it has the burden of showing that he was induced to commit the act for which he is on trial. (*People* v. *Terry,* 44 Cal.2d 371, 372 [282 P.2d 19].) The fact that an informer solicited the appellant to furnish marijuana would not alone give rise to an inference of entrapment. (See *People* v. *Richardson,* 152 Cal.App.2d 310, 318 [313 P.2d 651].) There was substantial support in the evidence for the determination that in each instance the appellant was a willing participant in a transaction of sale of marijuana to the officers and that no more persuasion was brought to bear upon him than is necessary in the course of an ordinary sale. (See *People* v. *Lindsey,* 91

Cal.App.2d 914, 917 [205 P.2d 1114].) No basis for a reversal of the judgment is disclosed by the record.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 7, 1962.