[Crim. No. 1851. Fourth Dist. Jan. 17, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT NOLAN, Defendant and Appellant.

Robert Nolan, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

GRIFFIN, P. J.—Defendant-appellant was charged with and convicted by a jury of selling heroin, in violation of Health and Safety Code, section 11501. He admitted three prior felony convictions; two for burglary, for which he served separate terms in Texas, and one for possession of a narcotic, for which he served a term in Chino State Prison. He was represented by counsel at the trial. He appealed from the judgment in propria persona and argues in his brief that he was entrapped by an officer into the sale. (Citing such authority as *People* v. *Roberts,* 40 Cal.2d 483 [254 P.2d 501] ; *People* v. *Jackson,* 106 Cal.App.2d 114 [234 P.2d 766] ; *People* v. *Schwartz,* 109 Cal.App.2d 450 [240 P.2d 1024] ; *People* v. *Lee,* 9 Cal.App.2d 99 [48 P.2d 1003] ; *Durham* v. *State* 162 Tex.Crim. 25 [280 S.W.2d 737].)

It is further contended by defendant that the evidence produced did not constitute a sale. (Citing such authority as *People* v. *Richardson,* 152 Cal.App.2d 310 [313 P.2d 651] ; *People* v. *Cohen,* 118 Cal. 74 [50 P. 20] ; *People* v. *Ballard,* 145 Cal.App.2d 94 [302 P.2d 89].)

Defendant's only other contention is that the appellate court wrongfully denied defendant's request for appointment of counsel on appeal. (Citing such authority as *In re McCoy,* 32 Cal.2d 73 [194 P.2d 531] ; *Johnson* v. *United States,* 352 U.S. 565 [77 S.Ct. 550, 1 L.Ed.2d 593] ; *Cash* v. *United States,* 261 F.2d 731, 735.)

FACTS

One Fernando M. Maldinado was a narcotic agent employed by the Department of Justice and the Bureau of Narcotic

Enforcement of this state. On January 9, 1962, at 7 p.m., the agent went to the Pass Time Café at 552 Fifth Avenue in San Diego. Inside, he saw the defendant, who approached him, and they conversed about where the agent had been of recent date. Defendant left the premises. The officer went outside and stood in front of the café, and later the defendant returned and said that he had come back to see if he could show the agent a new bar. They went to the Mexicali Bar, south on the same street, and defendant told the agent that there was some ''stuff'' around. He asked the officer what he wanted and suggested that the officer might want some ''four-barrel,'' a ''joint,'' or some ''pills,'' and the agent said that he wanted some ''good stuff.'' It was testified that ''stuff,'' ''four-barrel'' and ''good stuff'' all denoted heroin and that a ''joint'' is a marijuana cigarette. The agent's testimony was that defendant and he walked to a shoe-shine stand at a nearby intersection and defendant asked how many the officer wanted and the agent said ''two papers'' and asked how much it would be and the defendant replied ''ten dollars.'' The agent testified that defendant walked to the rear of the shoe-shine stand and when he returned he handed the agent two white paper-wrapped bindles and he then gave defendant the ten dollars in state funds and defendant departed.

The two bindles were produced in evidence and it was stipulated that they were examined by a chemist and found to contain heroin. The officer had met defendant several times before. He said that he first met defendant about two weeks before January 9, and that on one prior occasion defendant offered to sell narcotics to him, but the agent refused because defendant wanted the money before delivery; that subsequent to his arrest, defendant was interviewed and he told the agent that he had gotten the ''stuff'' from a man named ''T.V.,'' and that it was not his heroin.

The defense evidence consisted only of defendant's own testimony. He said he first met Maldinado in November and someone bought some narcotics for the agent; that he claimed he worked for the San Diego Police Department on a few occasions; that a week later defendant met the agent again and defendant told the agent that there was some ''stuff'' upstairs; that the agent pretended that he was a sailor and that his sister was using the ''stuff'' and that he was purchasing it for her; that a couple of weeks later defendant again spoke to the agent about some ''stuff'' and the agent asked if

he could "score" and defendant said he would "look around"; that defendant told him that someone was selling it upstairs but the agent said he didn't want to buy from him.

The defendant then testified that he was not engaged in selling narcotics; that he never had sold it; that he didn't have any narcotics, nor was he a user of it. Later, however, defendant said that he saw the agent at the Mexicali Bar and that was when defendant told him, "Well, I know where some is. I will go get it for you if you want me to"; that defendant went into the shoe-shine stand and got the bindles; that he (defendant) brought it out and gave it to the agent, but he said he did not recall the date. Defendant said that he made no profit on the transaction; that he thought of the agent as a friend and was just helping him out. On cross-examination, defendant said that he was using some heroin at the time, but that he was not addicted and was just "chipping." He said that he had not used narcotics since 1952, but the day he was arrested he said that he had had his last "fix" 45 days before. The doctor said that he had several needle marks. Defendant said that he did not know if he did have needle marks; that he couldn't see needle marks inside his elbow, nor did he notice marks on top of his right forearm. Defendant said that he could not have had so many marks, because he just "shot" three times. Defendant contended that he did not sell to Agent Maldinado, but just picked up some "stuff" for him.

### Sufficiency of the Evidence

The defendant did not deny that he had some hand in a narcotic transaction with a state agent. He claimed that he merely helped out the agent by telling him where he could obtain it and then picked up the contraband for him, and he claimed that he did not himself make a profit. Defendant handed the narcotic to the officer. The payment for it was made directly to the defendant. The situation is similar to *People* v. *Jones,* 176 Cal.App.2d 743, 746 [1 Cal.Rptr. 637]. By his own version, he aided and abetted in the commission of the offense. (*People* v. *Hutcherson,* 197 Cal.App.2d 771, 779 [17 Cal.Rptr. 636].) His suggestion that there was an entrapment is not meritorious. The trial court did instruct the jury on entrapment. The record shows, even by defendant's version, no particular persistence by the agent and no reluctance on the part of the defendant. It is clear that the defendant had a familiarity with narcotics and an apparent

easy access to sources of supply. We see no error in this respect. The evidence was sufficient to support the verdict.

After the appeal was taken by the defendant, in propria persona, to this court, he then made application for appointment of counsel. Notices were sent to the defendant and to his former attorney to determine if it would be of advantage to the defendant or helpful to the appellate court to have counsel appointed on this appeal. In reply to this communication, defendant's former counsel, by letter, informed this court that, to the best of his knowledge, the trial court had committed no error in its rulings and the case presented a question of fact which the jury saw fit to decide against the defendant, and that he had not been able to discover any reasonably meritorious questions that could be raised on the appeal. Defendant was so notified and given time to present such matters as he might feel were erroneous in the trial of the case. He presented a reply setting forth certain reasons why he should have been found innocent of the crime, including the points here presented. After an independent investigation of the record by the members of this court to determine if it would be of advantage to the defendant or helpful to this court to have counsel appointed on the appeal, we concluded that there was no necessity of appointing counsel and defendant was so informed. We see no abuse of discretion in this respect. (*People* v. *Hyde*, 51 Cal.2d 152 [331 P.2d 42].) The Attorney General has reviewed the evidence and possible questions to be presented and has sufficiently answered the points suggested by the defendant.

Judgment affirmed.

Coughlin, J., and Monroe, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.