[Crim. No. 7750. Second Dist., Div. Two. Dec. 26, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. JEAN DELORES RICHARDS et al., Defendants and Appellants.

John H. Marshall, Ellery E. Cuff, Public Defender, and James L. McCormick, Deputy Public Defender, for Defendants and Appellants.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Matthew M. Kearney, Deputy Attorney General, for Plaintiff and Respondent.

FOX, P. J.—In Count I of a grand jury indictment defendant Richards was accused of violating section 11501, Health and Safety Code, in that on August 19, 1960, she sold, furnished and gave away a narcotic (heroin). In Counts II and III both defendants were charged with like offenses, which were alleged to have been committed on August 23d and 24th, respectively. In Count IV defendant Bonin alone was accused of a similar offense on August 31st. The indictment further charged that defendant Richards had suffered a prior conviction of robbery, which she admitted to be true.

A jury found defendants guilty as charged on all counts. Motions for a new trial on behalf of each defendant were denied. Richards has appealed from the judgment. Bonin has appealed from the judgment and from the order denying his motion for a new trial.

Officer Rutherford, of the Los Angeles Police Department, Narcotics Division, was working as an undercover officer on August 19, 1960, when he met defendant Richards, at approximately 11 a. m., in the 600 block of Fenn Street, in Los Angeles. He had a conversation with her in which he inquired if he could "score," meaning purchase narcotics, to which

Richards replied, "Yes." They then left and went to a telephone, where Richards made a call. She informed Rutherford that they would have to go to 29th Street and Westmoreland. They drove to that general vicinity. When Richards left the officer's car he handed her two $5.00 bills and a $1.00 bill. She disappeared for a brief period, later returned, and handed Rutherford two $5.00 bills and 75 cents in change and stated, "I owe you a quarter," and "the man wasn't there; I will have to go back later." They returned to the place where they had earlier met. Richards made another telephone call later and directed the officer to drive her back to the locality where he had previously taken her. When she left the car that time the officer handed her two $5.00 bills. Richards again departed on foot, met a man, and was gone for approximately 20 minutes. Upon her return, the officer asked her what took her so long, to which she replied, "My connection only brought one paper [meaning a bindle containing narcotics], so we had to go back to his room and make up another one for you." When they returned to their initial meeting place, Richards delivered a white paper bindle to the officer as she left the car. The contents proved to be heroin. (Count I.)

On August 23, 1960, Rutherford met Richards at 3149 Johnston Street, in Los Angeles. He asked her "if we could score," and she replied: "I don't want to go near the streets with all of my marks . . . Lew [referring to defendant Bonin] will be able to go with you."[1] At this point defendant Bonin entered from another room in the apartment. After some further conversation about narcotics, Richards asked the officer if he would like to score, to which he replied, "Yes." Richards then said, "You go down with Lew." The officer and Bonin left, whereupon Bonin made a telephone call from a booth in the street. Upon returning to the officer, he said, "We have to go to 9th and Hoover."[2] They drove to the designation mentioned and parked at a small parking lot near a market. The officer inquired as to how much "stuff" Bonin's contact was bringing. He replied, "A gram." They waited for approximately ten minutes, when a man walked through the parking lot. Bonin said, "There he is." The officer gave Bonin $10 whereupon Bonin left the car but soon returned and informed the officer that he had made the pur-

[1] This evidence was offered only as to Richards.
[2] This conversation was offered only as to Bonin.

468

chase. They then returned to the house at 3149 Johnston Street. There Bonin handed the officer a small paper bindle. Richards was in the house at that time, as was another person whom the officer knew only as "Phil." The contents of the paper proved to be heroin. (Count II.)

The next day the officer again returned to the same address and inquired of Richards whether she would be able to go down to 9th and Hoover with him. She replied, "No, but Lew . . . can go down with you."[3] A short time later the officer, Bonin and Phil went to 9th and Hoover Streets where Bonin made a purchase; whereupon they returned to the Johnston Street address, where Bonin handed the officer a bindle of whitish powder, which proved to be heroin. (Count III.)

On August 31 Rutherford returned to the Johnston Street address where he again met Richards, who inquired if he wanted to "score," to which he replied, "Yes." Richards then said: "Lew is getting ready to go down in a minute." The officer and Bonin soon left the apartment. After Bonin had made several telephone calls he located a contact that provided him with a paper bindle containing heroin.[4] Upon their return to the Johnston Street apartment he delivered it to Rutherford. (Count IV.)

After Bonin's arrest, Officer Rutherford had a conversation with him in the interrogation room in the presence of two other officers. Rutherford read aloud his notes regarding the transactions with Bonin on August 23, 24 and 31. After hearing the statements from the notes, Bonin said: "Yes, that is the way it happened." This conversation was recorded on a tape, which was introduced in evidence at the trial. Bonin testified at the trial. He stated that he did not use heroin, and did not want any of the money or heroin involved in the transactions with Officer Rutherford, whom he first met on August 23d, being introduced to him by Richards. He indicated it was the officer's idea to buy the heroin, and that there were no conversations regarding its purchase in the presence of Richards, with whom he had lived off and on for seven years, and with whom he had lived continuously from March 1960 to the time of the transactions here involved. Richards, however, did not testify.

In seeking a reversal defendants contend: (1) that the evidence is insufficient to sustain the judgment as to all counts on the theory that they were, at most, purchasers of narcotics

---

[3]This conversation was offered as to Richards alone.

[4]This evidence was offered only as to Bonin.

and not sellers; and (2) that the court erred in refusing to instruct the jury as to the effect and value of circumstantial evidence. Additionally, defendant Richards contends that the evidence is insufficient to sustain her conviction on Counts II and III on the theory that she was not sufficiently involved in the transactions alleged therein.

The theory of defendants' first contention is that they were acting as mere agents for the buyer, i.e., Rutherford, and as such are not guilty of aiding or procuring the sale of narcotics. The People, however, contend that when a defendant procures and furnishes narcotics to another, even in the role of "go-between" with respect to a purchaser and supplier, or seller and buyer, such person is guilty of violating section 11501, Health and Safety Code.

Defendants' theory has been considered and rejected in a number of cases. In *People* v. *Grijalva,* 48 Cal.App.2d 690 [121 P.2d 32], the defendant was charged with two counts of selling, furnishing or giving away marijuana. There a narcotics officer was introduced to the defendant by a man named Willis who was acquainted with the defendant, and who told the officer that the defendant "would be in a position to make proper connections." The officer and defendant drove to a place designated by the latter; the officer gave the defendant $5.00 "to go and get the marijuana from the particular connection where he was going." Shortly thereafter the defendant returned in company with another man and handed the officer a package containing 20 marijuana cigarettes. A similar transaction occurred on a later date. In answer to the argument on appeal that there was no evidence that appellant made a sale, the court stated (p. 693) : "It was shown by the prosecution that the officer gave appellant $5 on two different occasions and on each occasion appellant returned and gave the officer twenty marihuana cigarettes. In each transaction appellant took the money of the officer, obtained the cigarettes and delivered them to the officer. This constitutes a sale." In *People* v. *Beccera,* 175 Cal.App.2d 53 [345 P.2d 269], the defendant was found guilty of a sale of heroin based upon the facts that in answer to a narcotic agent's question that he was looking for three papers of heroin for $20, defendant directed the agent to come with him; whereupon they drove in defendant's automobile to a place near some railroad tracks; the agent gave defendant $20, defendant left, and in about 10 minutes

returned with Ramirez, whereupon all of them drove a few more blocks and entered a vacant lot, where they parked; Ramirez told defendant that "the stuff is out there"; defendant and Ramirez got out of the car and pulled out a rubber balloon containing heroin from a rubbish pile. Defendant thereupon gave the heroin to the agent. It was argued on appeal that defendant was acting only as the agent of the buyer, and that Ramirez was in fact the only seller. In response to the argument, the court stated (p. 55) : "There is no merit in this contention, for 'all persons concerned in the commission of a crime, . . . whether they directly commit the act constituting the offense, or aid and abet in its commission, . . . are principals.' (Pen. Code, § 31.) The most that can be said from the evidence is that the question of whether or not appellant was the agent of Lopez or a seller operating with Ramirez was a question for the trier of fact and the trier of fact by the verdict has impliedly ruled against the construction contended for by appellant." Another case, closely analogous to the one at bar, is *People* v. *Jones,* 176 Cal.App.2d 743 [1 Cal.Rptr. 637]. There the officer was in a café talking to Ramirez when the appellant entered. Ramirez called the appellant over and said: "Bill here, wants to buy four joints." Appellant replied, "O.K., let's go in my car." The three men drove in appellant's car to an address on 127th Street, where the officer handed appellant $2.00. They entered a house where appellant talked to a woman named Deemer, but the officer could not hear this conversation. Appellant said the woman would bring the "pot" to them in two or three minutes. Deemer came to the car and handed six brown-wrapped cigarettes to appellant, who gave two to Ramirez and the other four to the officer. The appellant's conviction of selling, furnishing and giving away a narcotic, marijuana, was attacked on the ground that appellant did not sell, as charged, but only bought marijuana on behalf of the police officer. The court answered this argument as follows (p. 749) : "Under the evidence the trial court was warranted in reaching the conclusion that the appellant either was acting on his own behalf in supplying the marijuana cigarettes to the officer or was participating with the woman named Deemer in the sale of a narcotic to the officer." The court also made the further pertinent comment: ". . . it is to be noted that the offense charged in the case before this court was not limited to the act of selling but broadly included the furnishing or giving away of a narcotic. [Cita-

tions.] Therefore, the proof of a consideration moving to the appellant is not an essential element of the crime.''

The transactions involved in the four counts in the instant case closely resemble those in the cited cases. In each of the transactions one of the defendants, in response to the officer's inquiry about purchasing narcotics, took the officer some distance away, thereupon took money from him, left, and later returned with the narcotic, which was then passed on to the officer. Under the principles of the above cases, the defendants were clearly involved in making a sale of narcotics within the meaning of the statute. Furthermore, it is to be noted that the appellants were charged with the violation of a statute making it unlawful to sell, furnish or give away narcotics. (Health & Saf. Code, § 11501.) It is therefore apparent that the activities of the appellants in each of the four counts came within the activities which are made a public offense by this statute.

We turn now to defendant Richards' contention that the evidence is insufficient to sustain the judgment against her on Counts II and III of the indictment. The People counter with the argument that Richards was a principal in the commission of the crimes alleged in these counts by virtue of having advised and encouraged their commission. In our opinion, the position of the People is sound.

Penal Code section 31 states in part: ''All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission . . . are principals in any crime so committed.''

It is not necessary that Richards be physically present during the course of the transaction leading to the furnishing of narcotics to the officer in order to be found a principal in the commission of the offense. In *People* v. *McNulty,* 171 Cal.App. 2d 86 [340 P.2d 340], the narcotic officer had previously known the appellant and on several occasions had spoken to him about buying marijuana, on which occasions appellant denied having any of his own. The officer also had known the codefendant, Bob, and had seen appellant in his company several times. On the day in question, the officer met Bob at a bar; appellant appeared later. The officer asked appellant about procuring some marijuana, to which the latter replied that he could ''score'' for him. Appellant asked to use the officer's car, but instead the officer offered to drive appellant

472

to the location necessary for securing the marijuana. The officer gave appellant two $1.00 bills; the appellant gave them to Bob, stating, "You take him down to score on 14th Street." Thereupon Bob drove the officer to that locality and secured for him four marijuana cigarettes, three of which he gave the officer. Analyzing the evidence, the court stated (pp. 89-90) : "From this evidence alone arises the reasonable inference that either Bob was the go-between for appellant who was the seller, or both defendants were working as coparticipants in the sale for a supplier of narcotics operating out of the premises at 14th and Santee Streets. (*People* v. *Taylor*, 52 Cal.2d 91 [338 P.2d 377].) " In *People* v. *Perez*, 162 Cal.App. 2d 650 [328 P.2d 512], a case very similar to the one at bar, the narcotics officer approached the appellant in a café and inquired "if he had anything," to which appellant replied that he did and asked the officer how much he wanted. The officer replied that he wanted one-half a gram. The appellant then pointed to one Rivera and told the officer to go to a designated liquor store and wait for Rivera. The officer did as directed; Rivera later arrived, and gave the officer a bindle containing heroin for $12. It will be noted that appellant Perez did not accompany the officer to purchase the narcotic, nor did he personally receive any money from the officer. However, the court held that the evidence was sufficient to establish the appellant's guilt.

When Officer Rutherford, on August 23d, went to the Richards' apartment on Johnston Street he knew that just four days previously Richards had furnished him narcotics. She indicated that she did not want to go on the streets because of the narcotic needle punctures on her arms, but she immediately added that Bonin would be able to go with him. Thus Richards arranged for her codefendant to accompany the officer and handle the details of procuring the contraband and selling it to the officer. In addition, the jury knew that Richards had previously procured narcotics which she had disposed of to the officer. The jury also knew from defendant Bonin's testimony that he and Richards had lived together off and on for seven years and continuously from March of that year; and that she had introduced him to the officer. Considering the close relationship between the codefendants, the fact that Richards had previously supplied the officer with narcotics, the fact that the only reason she gave for not wanting to again accompany the officer to obtain narcotics was because of the marks on her arms, and that she still

cooperated by introducing the officer to the codefendant, and suggesting to the officer that he "will be able to go down with you," clearly constitute substantial evidence of Richards' guilt on the theory of aiding and abetting, or advising and encouraging, the commission of the offense. (Pen. Code, § 31.)

Similarly, on the very next day, August 24th, when the officer again went to the Richards' apartment and inquired whether she could assist him in obtaining narcotics, she replied, "No, but Lew . . . can go with you."

Under the provisions of Penal Code section 31, as interpreted and applied in the *McNulty* and *Perez* cases, it is clear that Richards was a principal to the offenses charged in Counts II and III of the indictment.

Defendants rely upon *People* v. *Abair*, 102 Cal.App.2d 765 [228 P.2d 336], and *People* v. *Lamb*, 134 Cal.App.2d 582 [285 P.2d 941]. Examination of these cases discloses that they are not pertinent to the question here presented.

We fail to find any merit in defendants' argument that the trial court erred "in refusing to instruct the jury as to the effect and value of circumstantial evidence." The guiding principle is that such an instruction is required "only where substantially all the evidence is circumstantial." (*People* v. *Schwab*, 136 Cal.App.2d 280, 290 [288 P.2d 627].) Application of the rule to the facts at hand shows that it was not error to refuse to give the requested instruction because a substantial portion of the evidence, as to each count, was direct. As to the transactions involving Bonin (August 23, 24 and 31) the evidence consists of the testimony of Officer Rutherford that Bonin accompanied him on each of these occasions to a location indicated by Bonin; that the officer handed Bonin money for the purchase of narcotics, and that on each occasion Bonin later handed the officer a paper bindle containing heroin. The officer's testimony was obviously direct evidence as to what he saw and did. The jury also had as direct evidence Bonin's own testimony that he helped the officer obtain narcotics on three occasions.

Turning now to the evidence involving defendant Richards in Count I, it will be recalled that it consisted of the testimony of Officer Rutherford in which the transaction there was almost identical with those involving Bonin. Consequently, the principles discussed above would also apply to the evidence concerning this count.

474

As to Richards' involvement in Counts II and III, the evidence includes Officer Rutherford's testimony regarding the conversations held with Richards on August 23d and 24th. Her statements, "I don't want to go near the streets with all of my marks . . . but Lew will be able to go with you," and "You go down with Lew now," constitute direct evidence of her having advised and encouraged the commission of the crimes by Bonin, who, according to the direct evidence of Rutherford, procured narcotics for him on these occasions.

It is thus apparent that, under the state of the evidence, the court did not err in refusing to instruct the jury as to the effect and value of circumstantial evidence. (See *People* v. *Contreras,* 167 Cal.App.2d 288, 289 [334 P.2d 208].)

As to defendant Richards the judgment is affirmed; as to defendant Bonin the judgment and the order denying a new trial are affirmed.

Ashburn, J., and Herndon, J., concurred.