[Civ. No. 7427.   Fourth Dist.   Feb. 24, 1965.]

[Crim. Nos. 9556-9558.   Second Dist., Div. Two.   Feb. 23, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. LOUIS
SOGOIAN, Defendant and Appellant.

(Consolidated Cases.)

Louis Sogoian, in pro. per., and James R. Montgomery, under appointment by the District Court of Appeal for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

HERNDON, J.—Three cases are consolidated for purposes of this appeal. In superior court case No. 273,776, the appeal is from the judgment entered against appellant following a jury verdict finding him guilty of selling heroin in violation of section 11501 of the Health and Safety Code. In superior court case No. 274,357, the appeal is from the judgment con-

victing him of violating section 10851 of the Vehicle Code in the theft, unlawful driving or taking of a vehicle. In superior court case No. 241,739, he appeals from the order revoking the probation theretofore granted him in an earlier proceeding which had resulted in his conviction of the crimes of forgery and issuing checks without sufficient funds in violation of sections 470 and 476a of the Penal Code.

In No. 273,776, appellant challenges the sufficiency of the evidence to sustain the verdict and judgment and contends that certain errors were committed in connection with the admission of proof of his prior narcotic convictions and failure to advise him of his right to counsel.

The evidence, in substance, discloses that on the afternoon of April 23, 1963, Officer Estrada, operating as an undercover officer for the narcotics division of the Los Angeles Police Department, and one Eddie DeValencia were parked at the corner of McBride Street and Whittier Boulevard in East Los Angeles. Appellant and a codefendant named Peter Hernandez walked over to the car. DeValencia asked Hernandez if he could get them some "stuff." Officer Estrada testified that "stuff" was another word for heroin. Hernandez said, "Yes, if you can give us a ride somewhere later." The officer said, "Sure, man," whereupon Hernandez and appellant entered the car. Hernandez said, "Let's go to Laguna Park."

When they had arrived at the designated location appellant said, "I'll go see if the man is there," and Officer Estrada handed him a twenty-dollar bill. Appellant returned approximately three minutes later and said, "He's not around." Hernandez then directed the officer to another location where he said, "I can get you the gram here." Hernandez left the car and shortly returned with two balloons. He handed one to the officer and kept one, stating, "I'm going to get me a cap and give one to my buddy Louie here." Hernandez then handed appellant one capsule, kept one, and gave the officer the second balloon containing the remaining capsules. The officer gave no money to Hernandez; appellant had not returned the twenty dollars originally given to him. The capsules in each balloon were found to contain heroin.

Appellant's contention regarding the sufficiency of the evidence is based upon his argument that the foregoing evidence failed to show that he ever exercised dominion and control over the contraband or knew of its narcotic character. This same argument was made to the trial judge who termed it "ludicrous." Even if it could be rationally argued that

appellant had not personally succeeded in furnishing the narcotics involved in the instant transaction, it is apparent that he aided and abetted Hernandez therein and therefore is equally liable as a principal. (*People* v. *Mays,* 205 Cal. App.2d 798, 802 [23 Cal.Rptr. 605]; *People* v. *Richards,* 198 Cal.App.2d 465, 471 [17 Cal.Rptr. 845].)

On cross-examination Officer Estrada was asked by appellant's counsel whether he had ever heard the word "stuff" used in reference to girls, stolen property, mattresses, etc., and the officer conceded that he had heard the word used with respect to many things. Apparently the purpose in this line of questioning was to establish in the minds of the jurors the possibility that appellant had not known the meaning of the words "stuff" and "cap" in the jargon of those trafficking in narcotics and had participated in the above described transaction in innocent unawareness of the nature of the substance which he and Hernandez were attempting to furnish to the officer. The prosecution therefore offered proof that appellant had suffered prior convictions for his possession of heroin. Appellant now contends that this was error because the latest such conviction occurred in 1953.

While remoteness of prior convictions may occasionally be of moment when offered in proof of certain aspects of the prosecution's case, such remoteness generally goes to the weight to be given such evidence rather than to its admissibility. (*People* v. *Zankich,* 189 Cal.App.2d 54, 66 [11 Cal. Rptr. 115].) Although this rule is not unbounded in particular applications, it is clear that in this case the trial court certainly did not abuse its discretion in determining that such evidence was admissible to establish the requisite proof of appellant's knowledge of the narcotic character of the substances involved. (*People* v. *Castellanos,* 157 Cal. App.2d 36, 39 [320 P.2d 152]; *People* v. *George,* 169 Cal. App.2d 740, 746 [338 P.2d 240].)

In this same connection appellant assigns as error the remarks of the trial court addressed to the jury at the time proof of this prior conviction was made. The court said: "Ladies and gentlemen of the jury, let me inform you at this time that the evidence that has been received, that has just been read by the District Attorney, is received for the limited purpose only of showing that the defendant had knowledge of the character of the substance which has been received in evidence and has been testified to as being heroin. It is received for that limited purpose and for no other purpose."

No objection to this statement was made at the trial. However, appellant now argues that in substance the jury was told ''that this prior conviction showed as a matter of law that the defendant had knowledge of the character of the heroin.'' We hold that appellant's interpretation of the court's statement is unacceptable. ▇ Moreover, where no objection is interposed and no request for further clarification is made during the trial, such issue cannot be raised for the first time on appeal. ▇ In addition, under the circumstances here presented, it appears extremely improbable that the jury could have believed that appellant had forgotten the meaning of the terms ''stuff'' and ''cap'' during and following his years of imprisonment. Under such circumstances the alleged error could not have been prejudicial. (*People* v. *Winston,* 46 Cal.2d 151, 161 [293 P.2d 40].)

▇ Lastly, appellant argues that he was denied his constitutional rights when Officer Estrada failed to advise him of his absolute right to remain silent and to have the assistance of counsel prior to the time he accepted the twenty dollars from the officer and left the car, stating: ''I'll go see if the man is there.''

It is true that our Supreme Court in *People* v. *Dorado,* 62 Cal.2d 338, 350 [42 Cal.Rptr. 169, 398 P.2d 361], relied upon comments made in the dissenting opinion of Justice White in *Escobedo* v. *Illinois,* 378 U.S. 478, 495 [84 S.Ct. 1758, 12 L.Ed.2d 977], in interpreting the opinion of the majority of the United States Supreme Court. It is also true that Justice White, in commenting upon the rule enunciated by the majority of the court, stated (p. 497) : ''Under this new approach one might just as well argue that a potential defendant is constitutionally entitled to a lawyer before, not after, he commits a crime, since it is then that crucial incriminating evidence is put within the reach of the Government by the would-be accused. . . .''

However, since the factual picture presented by the operations of the undercover officer in dealing with a willing supplier of narcotics does not fall within either the five-point rule enunciated in *Escobedo* (pp. 490-491), or the four-point rule promulgated in *Dorado* (pp. 353-354), we are not persuaded that we are compelled to rewrite the existing law on this subject. (*People* v. *Nunn,* 46 Cal.2d 460, 471 [296 P.2d 813] ; *People* v. *Braddock,* 41 Cal.2d 794, 802 [264 P.2d 521].)

▇ In appellant's second case, No. 274,357, however, the *Dorado* decision appears fully operative. Appellant was inter-

rogated several times over a three day period while in custody and in the absence of counsel. The record fails to reveal that he was ever advised of his right to counsel or of his absolute right to remain silent. In addition, it seems clear that the particular interrogation in which appellant's confession was alleged to have been made occurred after the investigation was "no longer a general inquiry into an unsolved crime" but had focused on "a particular suspect," namely, the appellant. In fact, it was made to the officer who was to transport appellant to court for his arraignment on this very charge and shortly before they left the administration building for that purpose. This officer gave the following testimony:

"At a conversation with Louie Sogoian that morning with regard to a 1960 Chevrolet station wagon and other articles involved, he stated that he and Orville Messick were walking eastbound on Pico—that would be East Pico, around the 3000 block—and they noticed a station wagon parked with a key in it. At this time he and Orville Messick got in the station wagon. He, Louie Sogoian, driving and he drove from this location directly to the area adjacent to Tucker's Pawnshop, which was on East Whittier Boulevard. At the time that they parked the vehicle there, Orville Messick removed the camera from the vehicle, and he, Sogoian, remained in the station wagon, and that Messick took the camera into Tucker's Pawnshop and pawned the camera.

"During this time he, Sogoian, noticed a jacket hanging in the back portion thereof, and he looked through the jacket, and found a wallet, and in this wallet, there was a driver's license, no money, or he didn't recall if there were any, other miscellaneous papers, but he, Louie Sogoian, kept the wallet and the driver's license.

"After Orville rushed from the pawnshop, they drove to around the 4800 block of East Whittier Boulevard, and left the station wagon in the rear in an alley."

Since this statement allegedly given by appellant constituted a full confession of the crime of which he was charged and convicted, a reversal is compelled " 'regardless of other evidence of guilt.' [Citations.]" (*People* v. *Dorado, supra,* 62 Cal.2d 338, 356.)

Respondent does offer the possibility that *Dorado* might not apply in this instance because, during appellant's cross-examination after he had taken the stand in his own defense, he was asked, "Q. Now, the fact that there was no lawyer present at any of these conversations, did this make any difference as

to the statements that you made or the conversations which you had?", and to which he replied, "I would make the same answer."

However, with commendable fairness respondent notes that appellant "may not be the best judge of his need for a lawyer, and cannot really say what answers he would give after being advised by an attorney." Moreover, it is unmistakable from the record that when appellant stated that he "would make the same answer," he was referring to his own testimony regarding these interrogations and not to that of the officer, i.e., appellant consistently denied making the confession attributed to him by the officer.

■ Lastly, appellant appeals from the judgment entered following the revocation of his probation in an earlier proceeding. However, he does not challenge the merits of this case but contends only that the trial court's finding that he was in violation of the terms of his probation must "stand or fall upon [our] decision regarding the appeal [in case No. 274,357]." We are unable to agree with this contention in view of the sequence of the two convictions we have considered herein.

While it is true that the judgment entered in case No. 273,776, which we sustain, was entered October 2, 1963, while the judgment in case No. 274,357, and the revocation of probation in case No. 241,739, occurred on September 27, 1963, nevertheless it is apparent that the trial judge who revoked appellant's probation was aware of the pending sentence to be imposed in the later proceeding. In fact, after noting that one of the terms and conditions of appellant's probation was that he must not violate any of the laws of the State of California, the court expressly noted that appellant had been convicted of selling narcotics in another court. Since we have affirmed this second essentially contemporaneous conviction, it would appear that no useful purpose would be served by remanding cause No. 241,739 for further consideration inasmuch as the judgment and sentence now being affirmed by us in cause No. 273,776 constitutes upon its face a clear violation of the terms of appellant's probation. In addition, the judgment in cause No. 273,776 provides that the more severe penalty imposed thereby shall run concurrently with any sentences theretofore imposed upon appellant. (Cf. Pen. Code, § 1203.2a.)

The judgment of conviction in cause No. 273,776 and the order under review in cause No. 241,739, which revokes appel-

lant's probation and imposes sentence, are affirmed. The judgment in cause No. 274,357 is reversed and the cause is remanded.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied March 25, 1965, and appellant's petition for a hearing by the Supreme Court, was denied April 21, 1965.