[Crim. No. 9738.   Second Dist., Div. Four.   Sept. 30, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. MELVIN AYERS et al., Defendants and Appellants.

Jerry B. Riseley, under appointment by the District Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, and Derald E. Granberg, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendants were indicted, jointly with Robert W. Bumbrey and William Stokes. The indictment, in six counts, charged a series of sales of marijuana and (as to Ayers only)[1] an offer to sell heroin. After a trial by the court, jury trial having been duly waived, defendant Bumbrey was found guilty on the two counts in which he was alleged to have participated, defendant Stokes was found guilty on three counts and not guilty on one, defendant Ayers was found guilty on one count of sale of marijuana but not guilty on the count charging an offer to sell heroin, defendant Palmer was found guilty on one count of sale of marijuana. We are here concerned only with appeals by defendants Ayers and Palmer. Probation was denied as to each and state prison sentences imposed.[2]

---

[1] A ''John Doe #10'' was also charged in this count, but apparently was never brought to trial.

[2] As in *People* v. *Moreno* (1965) 235 Cal.App.2d 386 [45 Cal.Rptr. 243] the clerk's transcript shows, as to Palmer, an order adjourning the criminal proceedings and directing the sheriff to file a petition, in Department 95 of the trial court, under section 6451 of the Penal Code. The next (and so far as the record originally before us discloses the only) reference to these proceedings is the statement, by the trial court, contained in the reporter's transcript for a later date, that ''I received word from Department 95 that they refused to take this defendant.'' The court then proceeded to arraign Palmer for judgment, denied probation, and imposed a prison sentence. As we did in *Moreno*, we have augmented the record by resort to the original superior court file. Examination of that file discloses a minute entry of proceedings in Depart-

Officer Benton, of the Los Angeles Police Department, acting as an undercover officer, became acquainted with defendant Bumbrey who, on May 7, 1963, sold the officer five marijuana cigarettes. On the next day, the officer again met Bumbrey and asked to buy some more marijuana. Bumbrey introduced the officer to defendant Ayers. After some conversation as to the quality of the marijuana that Ayers claimed he could procure, the three men drove to a location designated by Ayers. Ayers left the car, spoke (out of earshot) to defendant Stokes and returned to the car. At Bumbrey's suggestion, the officer gave Bumbrey $10. Stokes then entered the car and the four men drove to another location. Bumbrey gave money to Stokes who left the car and walked to the rear of a building. In a few minutes he returned, and laid a package on the front seat of the car between the officer and Bumbrey and handed Bumbrey some change. Stokes was then driven to another location where he left the car. Eventually, Bumbrey gave the package (which it was stipulated contained marijuana) to the officer with some change, keeping (as agreed) $1.00 for his services. After Stokes left the car, Ayers said that he had "made the score" (meaning arranged the purchase) and asked what was going to be done for him. There followed conversation leading up to the alleged offer to sell heroin—the count on which Ayers was found not guilty.[3] There is no evidence that Ayers actually received any consideration for the sale by Stokes. On July 5, 1963, the officer met Stokes and asked to buy more marijuana. Stokes introduced the officer to Palmer, who sold him a quantity of marijuana.

Ayers did not testify. Each of the other defendants denied the various transactions and denied having seen Officer Benton prior to the time when they were arrested on the present indictment.

I

■ It is not contended that the evidence was insufficient to sustain the judgment against Palmer, but court-appointed

ment 95, dismissing the 6451 proceedings and ordering defendant returned to the criminal department. Since the record before us, as so augmented, discloses that the criminal court had been reinvested with jurisdiction, we proceed to consider the judgment as ultimately entered.

[3] The evidence was that Ayers took the money but never delivered the promised heroin. The comments of the trial judge, at the time he announced his decision, indicate that he felt that Ayers was guilty, if at all, of obtaining money under false pretenses, a nonincluded offense.

counsel argues that Ayers was not guilty of the sale by Stokes, arguing that that sale was made to Bumbrey directly. The evidence above set forth refutes this contention. Ayers acted as the go-between and thereby aided and abetted the Stokes-Bumbrey-Benton transaction; under Penal Code, section 31, he is equally guilty of the sale and it is immaterial that we do not know what motivated him to participate.

## II

■ Counsel next argues that the constitutional rights of the defendants were violated because the officer did not, in the course of the various transactions, warn them of their right to counsel. Clearly, none of the four elements set forth in *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361] were here present. The argument that the *Dorado* doctrine extends to statements made in the course of commission of the crime itself is patently fallacious and has been rejected by the cases in which it has been raised. (*People* v. *Cooper* (1965) 234 Cal.App.2d 587 [44 Cal.Rptr. 483]; *People* v. *Sogoian* (1965) 232 Cal.App.2d 430 [42 Cal.Rptr. 736].)

## III

■ Counsel's chief argument is that all of the evidence against the defendants was illegally obtained and, therefore, improperly admitted. The argument is as follows: (1) An undercover officer who is engaged in buying narcotics for evidence is acting in a "matter within the jurisdiction of" a department of the United States, since Congress has regulated traffic in narcotics and the officer presumably has validated his actions by securing the exemption provided for by section 4702 of Title 26, United States Code, and by section 151.223 of the Code of Federal Regulations; (2) under section 1001 of Title 18 of the United States Code, it is a crime to conceal or cover up any material fact or to make any false statement or representation, in any matter within the jurisdiction of any federal department;[4] (3) the conduct of the undercover

---

[4]The section reads as follows: "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device, a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both." (June 25, 1948, ch. 645, § 1, 62 Stat. 749.)

officer necessarily involved conduct proscribed by this section; (4) a defendant has a constitutional right not to have evidence used against him which has been illegally obtained.

The argument is highly ingenious; but we do not regard it as meritorious. We need not consider whether or not the law prohibits the use of all evidence obtained by conduct which, without violating any constitutional provision, violates a statutory rule. No violation of law by Officer Benton is shown. The statute relied on fills a sufficient purpose if it is limited to situations in which deception is practiced upon the government by those seeking to deal with it. It is common knowledge that the detection and punishment of much crime—and especially offenses against narcotic laws, and against various forms of vice where there is no "victim" to complain or to testify—would be impossible unless the police could use the services of an undercover agent. Had the Congress intended to throw up not a mere hurdle, but an absolute roadblock, against successful prosecution of offenses of this kind, it would have expressed that purpose in clear and unmistakable language. This it certainly has not done by the statute above quoted.

The judgments are affirmed.

Files, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied October 22, 1965, and appellants' petition for a hearing by the Supreme Court was denied November 24, 1965.