[Crim. No. 5600. First Dist., Div. Two. Nov. 22, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. CHESTER GUY ROOT, JR., Defendant and Appellant.

Chester Guy Root, Jr., in pro. per., and James C. Rosa, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, John T. Murphy and Horace Wheatley, Deputy Attorneys General, for Plaintiff and Respondent.

TAYLOR, J.—Defendant appeals from a judgment of conviction entered on a jury verdict finding him guilty of attempting an abortion on Beverly Rubio (Pen. Code, § 664) and soliciting Donna Wilson for an abortion (Pen. Code, § 276), and from the order denying his motion for a new trial. He contends that: 1) a tape recording of his conversation with one of the victims was admitted into evidence in violation of *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]; 2) there is insufficient evidence of a direct unequivocal act to support the judgment as to the attempted abortion; and 3) he was subjected to multiple punishment contrary to section 654 of the Penal Code, as well as erroneously sentenced to prison instead of the county jail contrary to section 664 of the Penal Code.

The record reveals the following: On March 30, 1965, Marion Franklin, a clinical laboratory technologist employed at the Fairmount Medical Laboratory in El Cerrito, received a telephone call from a man who identified himself as James or Ross Murphy. The caller offered to give Miss Franklin $100 for every name and telephone number of a woman with a positive pregnancy test and stated that he would contact these women and "set them up for a delicate operation in Mexico." When Miss Franklin reported the call to the police, she was told to have him telephone her at home and to give him the name and telephone number of Donna Wilson, a Berkeley policewoman. Miss Franklin did so when she heard from "Mr. Murphy" again several weeks later. "Mr. Murphy" was identified at the trial as defendant, C. G. Root.

Defendant called Donna Wilson several times, stating that he had been informed that she had sought advice regarding a

"delicate operation" and that it would cost $650. Pursuant to a prearranged plan of the Berkeley Police Department and State Department of Professional and Vocational Standards, on June 4, 1965, Beverly Rubio, a special operator, was given a purse containing $650 in marked money and a radio transmitter. Mrs. Rubio was instructed to accompany Miss Wilson to the latter's residence in El Cerrito to await a call from the purported abortionist. Receiving units were installed in a police car and in the house next door to the Wilson residence to record any conversations taking place in the Wilson home.

After Mrs. Rubio and Miss Wilson arrived at the Wilson home, defendant called again and told Miss Wilson to proceed to a nearby location. Mrs. Rubio, wearing Miss Wilson's red coat, did so but defendant did not appear. However, as Mrs. Rubio was returning to the Wilson home, defendant came down the steps toward her and asked if he could come in. Mrs. Rubio refused indicating she did not want the operation performed at the house and told defendant that he could call her.

Defendant called about 15 minutes later and talked to Miss Wilson who thereafter hid in the basement. When defendant arrived about 10 minutes after the conclusion of the telephone call, Mrs. Rubio was alone in the main part of the house and admitted him. Defendant entered, checked the closets and all the rooms and opened all of the doors. Thereafter, he left and returned a few minutes later carrying a brown paper grocery bag containing a speculum,[1] a long narrow scissorlike object with dull ends, and a long tubelike object to which he attached a collapsible tube. Defendant washed these instruments in the bathroom of the Wilson home and "sterilized" them with a piece of cotton from the bag while explaining the purposes of the various instruments to Mrs. Rubio. He also explained that the abortion would occur somewhere between 20 to 60 hours after the operation, and told her how to dispose of the foetus. He also indicated that he was experienced and highly skilled in this kind of operation which he had learned to perform in Europe, and gave her two packages of pills to coagulate the blood. When defendant asked for the money, Mrs. Rubio gave him the $650 in marked currency from her purse.

Defendant counted the money and then asked for some towels. He put his instruments on one towel, placed the other across the end of the bed and instructed Mrs. Rubio to get two

---

[1]An instrument for dilating certain passages of the body for viewing.

chairs and place them spaced apart at the end of the bed. He further instructed her to turn off all the lights and then remove her underpants and lie across the bed with one leg on each chair.

Thereafter, defendant placed his pen flashlight in his mouth and knelt down beside the bed. After he placed his hand on Mrs. Rubio's stomach and remarked that she was beginning to show, Mrs. Rubio gave the prearranged signal by saying: "Oh, my God." The police and other investigators rushed in and arrested defendant who had the $650 in his billfold. All of the conversations between Mrs. Rubio and defendant were recorded and the tape introduced into evidence and played to the jury. Defendant objected to the introduction of the tape but did not testify or call any witnesses on his behalf.[2]

■ The contention that the court erred in admitting the tape of defendant's entire conversation with Mrs. Rubio while he was in the Wilson house is without merit. The argument that the *Dorado* doctrine extends to statements made in the course of the commission of the crime itself is patently fallacious and has been rejected in every case where it has been raised (*Ballard* v. *Superior Court,* 64 Cal.2d 159, 170 [49 Cal.Rptr. 302, 410 P.2d 838] ; *People* v. *Ayers,* 237 Cal.App.2d 351 [46 Cal.Rptr. 878]). Here, as in *Ballard, supra,* the defendant was not in custody at the time he uttered the incriminating statements to the victim.

Defendant, citing *People* v. *Holbrook,* 45 Cal.2d 228 [288 P.2d 1], and *People* v. *Gallardo,* 41 Cal.2d 57 [257 P.2d 29], next argues that the evidence is insufficient to support the conviction for attempted abortion as it discloses only "a mere preparation for the commission of the crime." We do not agree. ■ In order to be found guilty of abortion, the defendant must know or believe that the victim is pregnant and must intend by the means employed to produce a miscarriage (*People* v. *Kutz,* 187 Cal.App.2d 431 [9 Cal.Rptr. 626]). The gist of the crime is not the actual consummation of an abortion but rather the performance of the acts prohibited by section 274 of the Penal Code[3] with the intent to produce a miscarriage (*People* v. *MacEwing,* 216 Cal.App.2d 33 [30 Cal.Rptr. 476].) ■ To establish an attempt, it must appear that the

---

[2]There is no indication in the record concerning the theory of the defense. The pro. per. brief filed by defendant on this appeal need not be considered as he is represented by an attorney of record (*People* v. *Mattson,* 51 Cal.2d 777, 798 [336 P.2d 937]).

[3]"Every person who provides, supplies, or administers to any woman, or procures any woman to take any medicine, drug, or substance, or uses

defendant had a specific intent to commit a crime and did a direct unequivocal act toward that end; preparation alone is not enough and some applicable fragment of the crime must have been accomplished (*People* v. *Gallardo, supra,* p. 66). Once the design of a person to commit a crime is clearly shown, slight acts in furtherance of the design will constitute an attempt (*People* v. *Seach,* 215 Cal.App.2d 779, 783 [30 Cal.Rptr. 499]).

We note that in the *Holbrook* case, the defendant merely explained the procedure to the victim, instructed her to put on a gown and accepted her money; in *Gallardo,* defendant arranged for the operation by filling out hospital cards and accepted the victim's money. Thus in both cases, the reviewing court held that there had been no direct unequivocal act toward the commission of an abortion.

Here, defendant had explained the procedure and followup to Mrs. Rubio, had given her pills, and washed the instruments. Mrs. Rubio was lying on the bed, prepared for the operation, and defendant assumed a position at the foot of the bed in order to perform the operation and had placed his hand on her stomach. Sterilization of the instruments was held sufficient evidence in *People* v. *Berger,* 131 Cal.App.2d 127 [280 P.2d 136], and *People* v. *Reed,* 128 Cal.App.2d 499 [275 P.2d 633]. In *People* v. *Bowlby,* 135 Cal.App.2d 519 [287 P.2d 547, 53 A.L.R.2d 1147], the victim was on the table prepared for the operation and the defendant was seated in front of her wearing rubber gloves and preparing to insert a vaginal speculum when the police entered. The court held, at page 529, that the defendant had unequivocally manifested an existing intention to go forward to the completion of the crime. ■ Here, there is uncontroverted evidence that defendant believed Mrs. Rubio to be pregnant, had supplied her with medicine and prepared the instruments to procure a miscarriage. Thus there can be no doubt that by engaging in the acts just preliminary to the administration of drugs or insertion of instruments, defendant had taken the necessary unequivocal steps toward the completion of the crime (*People* v. *Raffington,* 98 Cal.App. 2d 455, 459 [220 P.2d 967]).

■ Defendant next argues that the trial court erroneously sentenced him to the state prison pursuant to subdivision 1 of

or employs any instrument or other means whatever, with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life, is punishable by imprisonment in the state prison not less than two nor more than five years.''

section 664 rather than to the county jail for one year pursuant to subdivision 2 of section 664[4] as abortion is punishable by imprisonment in the state prison not less than two nor more than five years (Pen. Code, § 274). The same argument raised in an identical factual situation was rejected in *In re Bandmann*, 51 Cal.2d 388 [333 P.2d 339]. The court said at pages 393 and 394: "Petitioner argues that subdivision 2 of section 664 was held applicable to attempted abortion in *People* v. *Bowlby*, 135 Cal.App.2d 519 [287 P.2d 547, 53 A.L.R.2d 1147]. In the *Bowlby* case the defendant was convicted of abortion and of attempted abortion. He was sentenced to one year in the county jail on the attempted abortion count. Although the court affirmed the judgment of conviction there was no discussion of the point raised here, and the case cannot be considered authority for the proposition urged by petitioner that subdivision 2 of section 664 is applicable to attempted abortion convictions.

"In view of the clear wording found in the body of subdivisions 1 and 2 of section 664 of the Penal Code there is no merit to petitioner's contention that said statute is clearly ambiguous requiring a construction that subdivision 2 is applicable to this case and defendant should have received a county jail sentence."

Finally, defendant contends that since he was led to believe that Miss Wilson and Mrs. Rubio were the same person, his sentencing for soliciting the former and attempting an abortion on the latter constitutes a multiple punishment prohibited by section 654 of the Penal Code.[5] We agree.

 The prohibition in section 654 against multiple punishment applies not only where one unlawful act in the ordinary sense is involved but also where there is a course of conduct that violates more than one statute but comprises an indivisible transaction. The divisibility of the course of conduct depends upon the intent and objective of the defendant, and if

---

[4]"If the offense so attempted is punishable by imprisonment in the state prison for any term less than five years, the person guilty of such attempt is punishable by imprisonment in the county jail for not more than one year."

[5]Defendant, citing *People* v. *Hernandez*, 61 Cal.2d 529 [39 Cal.Rptr. 361, 393 P.2d 673, 8 A.L.R.3d 1092], and *People* v. *Vogel*, 46 Cal.2d 798 [299 P.2d 850], erroneously argues that as his objective was merely to perform an abortion on one victim, his mistake of fact concerning her identity vitiated the requisite specific intent. This argument is not pertinent. *People* v. *Vogel*, *supra*, held that the defendant's good faith belief that his former wife had obtained a divorce was a valid defense to bigamy; *People* v. *Hernandez*, *supra*, held that the defendant's reasonable belief that the girl was over 18 years of age, was, if proved, a valid

all the offenses committed are incident to one objective, the defendant may be punished for any one of them but not for more than one (*In re Cruz,* 64 Cal.2d 178, 180 [49 Cal.Rptr. 289, 410 P.2d 825]).

The purpose of the protection against multiple sentences is to insure that the defendant's punishment will be commensurate with his criminal culpability. Thus it has been held that a defendant who engages in criminal activity with the intent to harm more than one person or by means likely to cause harm to several persons is more culpable than a defendant who harms only one person. (*Neal v. State of California,* 55 Cal.2d 11, 20 [9 Cal.Rptr. 607, 357 P.2d 839].)

In the instant case, however, defendant believed that the woman he contacted by phone (Miss Wilson) and the woman he later met (Mrs. Rubio) were the same person. The fact that they were not was due to the State's substitution of victims for its own purposes. While defendant violated two statutes, *he did so in a single course of criminal conduct directed against what he was led by the State to believe to be the same woman,* and the solicitation had no objective apart from the attempted abortion subsequently committed (*In re Cruz, supra*). The State, with commendable objectivity, concedes that the rule against double punishment would be violated if defendant were punished for soliciting and attempting to perform an abortion on the same person. The State's substitution of victims without defendant's knowledge does not justify a different result.

Defendant here was sentenced to concurrent sentences that are a double punishment in violation of section 654 (*People v. Quinn,* 61 Cal.2d 551 [39 Cal.Rptr. 393, 393 P.2d 705]). The appropriate procedure on appeal is to eliminate the effect of the judgment as to the lesser offense insofar as the penalty is concerned (*People v. Hicks,* 63 Cal.2d 764, 767 [49 Cal.Rptr. 139, 408 P.2d 747]; *People v. McFarland,* 58 Cal.2d 748, 762-763 [26 Cal.Rptr. 473, 370 P.2d 449]). Attempted abortion is punishable by imprisonment in the state prison for

defense to statutory rape. Both *Vogel* and *Hernandez* emphasized the significance of sections 20 and 26 of the Penal Code and overruled well-established precedents in relation to two statutory offenses where there had previously been no defense of mistake of fact (1 Witkin, Cal. Crimes, § 151, pp. 145-146). As indicated above, the offenses here involved (Pen. Code, §§ 276 and 664) are specific intent crimes. As to such offenses, the law has always recognized as a defense honest purpose and not dishonest ignorance of the law (*People v. Smith,* 63 Cal.2d 779, 793 [48 Cal.Rptr. 382, 409 P.2d 222]). Here, defendant admittedly did not undertake the prohibited acts with an honest purpose, but intended to commit abortion.

not less than two nor more than five years (Pen. Code, § 274), while soliciting an abortion is punishable by imprisonment in the county jail not longer than one year or in the state prison not longer than five years, or by a fine of not more than $5,000 (Pen. Code, § 276).

Thus the judgment is reversed insofar as sentence was imposed for soliciting abortion in violation of Penal Code section 276 and affirmed in all other respects. The appeal from the order denying motion for a new trial is dismissed.

Shoemaker, P. J., and Agee, J., concurred.

A petition for a rehearing was denied December 22, 1966, and appellant's petition for a hearing by the Supreme Court was denied January 18, 1967.